Fern Lorie **HAMMOND**, Plaintiff,

v.

The **HOUSING AUTHORITY AND URBAN RENEWAL AGENCY OF LANE COUNTY**, a public body, corporate and politic, Defendant.

Violet **MOSSEY**, Plaintiff,

v.

The **HOUSING AUTHORITY AND URBAN RENEWAL AGENCY OF LANE COUNTY**, a public body, corporate and politic, Defendant.

Civ. Nos. 70–264, 70–265.

United States District Court,
D. Oregon.
April 2, 1971.

Babcock & Ackerman, Robert L. Ackerman, Springfield, Or., for plaintiffs.

Miller, Moulton & Andrews, Eugene, Or., for defendant.

## OPINION

ALFRED T. GOODWIN, District Judge:

Plaintiffs bring action under the Civil Rights Act, 42 U.S.C. § 1983, to recover money damages against their landlord, a public housing authority. Plaintiffs allege that they have been denied equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution. From 1964 to 1970 defendant charged a higher rent to welfare recipients than it charged to tenants whose incomes were derived from other sources. This court has jurisdiction under 28 U.S.C. § 1343.

The facts are not in dispute. Defendant is an agency of Lane County, Oregon, and was organized under state enabling legislation to construct and manage housing for low-income persons and their families. Plaintiff Mossey has been a tenant of defendant's public housing project at Springfield, Oregon, since 1964. Plaintiff Hammond has been a tenant since 1966.

In 1960, before the first housing unit was built, the Board of Commissioners of the Housing Authority and Urban Renewal Agency of Lane County met to fix rent schedules for the low-income public housing in the county. The schedule set one rent for tenants who received all or part of their income from "public assistance" programs, such as Aid to Dependent Children, and a lower rate for those tenants whose income was derived from private employment, pensions, or social security benefits. Tenants were thus classified for purposes of rental rates not only by income level but by income source.

Welfare grants from 1960 to 1964 included a sum formally designated as a "shelter allowance," and the commissioners adopted a rental rate that would equal this sum ($55.00) for public assistance tenants only. Working tenants and retired persons receiving the same amount of total income as welfare tenants paid a substantially lower rent.

■ There is no question that the Housing Authority has broad discretionary authority under state and federal law to fix rental rates. The Housing Authority was created for the humanitarian purpose of providing safe and sanitary dwellings for persons of low income. See 42 U.S.C. § 1401; ORS 456.-065(2).

■ Ability to pay is obviously crucial to any determination of appropriate rental charges, and the Authority must have reasonable leeway in determining that ability and in adjusting rents accordingly. However, in exercising its lawful authority, the Housing Authority must classify its tenants for rental rating purposes on a basis which has some reasonable relation to the purposes for which public housing is built and maintained. See Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134 (S.D. N.Y.1968).

The defendant seeks to justify the challenged rent differential by pointing to certain employment-connected expenses incurred by working tenants, i. e., child-care service, withholding of state and federal taxes, special clothing, meals, and grooming expenses. Defendant asserts that nonworking tenants do not bear these burdens.

The defendant argues that it is entitled to take into account all relevant factors bearing upon "disposable income." In so doing, defendant believed that it would encourage gainful employment and equalize the economic status of welfare and nonwelfare tenants who received the same amount of income.

■■ If in fact the disparate rent schedules accomplished the desired governmental goals, a reasonable basis for their utilization probably could be articulated, and equal-protection rights would not necessarily be infringed. *See* Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). But as applied in this case, the unequal rent schedules for the two classes of tenants cannot be sustained.

It makes no sense to classify, for example, pensioners or recipients of social security retirement benefits in the same category as working tenants. Such tenants have no greater work-related expenses than have welfare mothers. Nevertheless, defendant did so classify them.

I can find no reasonable justification for discriminating for rental purposes between nonworking welfare tenants and other nonworking tenants receiving equal income from other sources.

The propriety of an attempt by a housing authority to motivate welfare recipients to seek work by charging discriminatory rents is itself doubtful. Equally dubious is the attempt made by the housing authority to use state and federal welfare moneys to subsidize the repayment of its federal housing loan. But these factors need not be thoroughly explored here. The arbitrariness of the rent classifications is demonstrated when it appears that the unequal rental schedule was based on factors other than rent-paying ability.

I find that defendant has discriminated against plaintiffs in violation of their rights under the equal-protection clause of the Fourteenth Amendment. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134, 138 (S.D.N.Y.1968).

The remedy in this case poses more difficulty than defining the wrong. If injunctive relief were necessary, this would be an appropriate case for such relief. But in January 1970, after the plaintiffs sought legal advice, defendant voluntarily discontinued the practice of charging public assistance tenants a different rental than it charged other tenants receiving equal income. A unitary rental schedule is now in use.

Plaintiffs seek money damages from the Housing Authority to compensate them for the overcharges they claim to have suffered.

A substantial money judgment would work a hardship, not only upon the defendant Housing Authority, but upon its present tenants as well. The defendant would almost certainly have to raise the rent charged all its tenants in order to pay any judgment imposed, since the Housing Authority has no sources of income other than the rents received from its low-income tenants.

The plaintiffs paid a subsidized rent without protest for many years. They bear at least some of the burden of volunteers. They made no protest until very recently. When they made their protest, the policy was changed. Under all the circumstances, the plaintiffs have shown little, if any, direct damage. There is no showing that the housing, subsidized as it was, was not worth as much, or more than, the rents they paid.

■ Plaintiffs have proven no substantial damage. They have, however, incurred substantial expenses in bringing this litigation. The result of this action has benefited the plaintiffs as well as other tenants similarly situated; they should recover attorney fees.

Plaintiffs' attorney, accordingly, is allowed $1,000.00 attorney fees for the consolidated cases.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).