311 A.2d 278.

CHARLES BAKER *et al. vs.* WILLIAM J. DONOVAN *et al.*

NOVEMBER 13, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. The plaintiffs are tenants of the Housing Authority of the city of Newport (the "authority") which

maintains and operates federally subsidized public housing accommodations for persons of low income. During 1970 the plaintiffs were notified that their monthly rentals were being increased, whereupon, on their own behalf and on behalf of all others similarly situated, they commenced this civil class action in the Superior Court against the authority, its board of commissioners, and its executive secretary. They asked the court to enjoin any further collection of the rent increases, and they also asked it to enter a judgment declaring that the increases violated and were repugnant to G. L. 1956 (1970 Reenactment) §45-25-18.1(1)(D), as amended.

The local housing authorities of several other municipalities intervened as parties defendant, as did the attorney general who had been advised that the constitutionality of the rent-freeze legislation had been questioned.

Following a hearing before a trial justice sitting without a jury on what essentially were stipulated facts, a judgment was entered denying a preliminary injunction and declaring that the contested increases in rent neither violated nor were repugnant to the rent-freeze legislation. The plaintiffs appealed.[1]

The case has its roots in the federal public housing legislation whose underlying purpose, briefly and broadly stated, is to provide decent housing accommodations for every American family in a low-income bracket at a rental commensurate with its ability to pay. *Thorpe* v. *Housing Authority*, 393 U. S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed. 2d 474, 483 (1969); *Hammond* v. *Housing Authority*, 328 F.Supp. 586 (D.Ore. 1971); 42 U.S.C. §§1401, 1402(1)(A)

---

[1]The case qualifies for review because the court's declaration of the statute's effect upon the plaintiffs' legal relations with the authority, unlike its denial of a preliminary injunction, was a final judgment and therefore appealable. *See Super. R. Civ. P.* 73(a).

(1970). The legislation,[2] as a means of achieving its objective, requires a local authority to re-examine, at least annually, each tenant's family income. Thereafter, the local authority, subject to certain exceptions not here relevant, must either terminate the occupancy of any tenant whose family income has increased beyond the approved maximum income limits, or adjust — either by increase or by decrease — the rent charged a tenant where his family's income is such that the rent then charged no longer conforms to the approved rent schedule.

Following a routine re-examination in this case, the authority found that each plaintiff's aggregate family income had increased and raised his rent in accordance with the approved rent schedule. The plaintiffs question neither the directives nor the manner in which they were applied. Instead, they contend that §45-25-18.1(1)(D), as amended,[3] the rent-freeze statute, so-called, renders those direc-

---

[2]The federal statute which controls with respect to federally subsidized housing accommodations like those occupied by plaintiffs is §10(g) (3) of the United States Housing Act of 1937, as amended, 42 U.S.C. §1410(g)(3) (1970). Issued pursuant thereto are U. S. Dep't of Housing & Urban Development, Low-Rent Housing Income Limits, Rents, & Occupancy Handbook, RHA 7465.1 (June 1969) (hereinafter "HUD Handbook"). and Part 2 of Terms and Conditions of a Consolidated Annual Contributions Contract between Local Authority and Public Housing Administration, PHA-3011, as amended (October 1957) (hereinafter "Contributions Contract").

[3]General Laws 1956 (1970 Reenactment) §45-25-18.1(1)(D), as amended, provides in pertinent part that:

"(1) *To the extent not inconsistent with law,* each housing authority shall adopt and promulgate reasonable rules which establish:
"* * *

"(D) * * * that no increase in the annual income of the tenant or in the aggregate annual income of the tenant and his family shall be cause for any increase in the tenant's rent or for termination of the lease for a period of one (1) year after any such increase in the tenant's income or in the aggregate income of the tenant and his family ·shall have occurred." (emphasis added)

tives inoperative, at least to the extent that they may require an increase in rent within one year after an increase in the tenant's family income. That legislation specifically states, however, that it shall apply only if it is not inconsistent with other law, *viz.*, "* * * the United States housing act of 1937, as amended * * * and any contracts, rules and regulations promulgated thereunder * * *." P. L. 1968, ch. 54, sec. 1.

Here the authority asserts that the rent-freeze statute is incompatible with §207(C) of the Contributions Contract[4] which it reads as requiring rent adjustments to be made as they were in this case — forthwith upon completion of a periodic examination, or at least with such reasonable dispatch thereafter as the circumstances permit.

Ignoring the plausibility of that reading, plaintiffs argue instead that the federal law fails to fix with specificity when their rent increases should take effect and that it cannot therefore be incompatible with the state rent-freeze statute which does establish such an effective date.

But even were we to disregard §207(C) and to assume, as plaintiffs do, that the federal law is silent on the subject matter, that silence would not, as they urge, lead inexorably to the conclusion that the federal directives, read in their entirety, will tolerate a postponement of a required rent adjustment for a year or more. Rather, it presents a problem in construction which, in the absence of controlling federal authorities, imposes upon us twin duties: ascertaining what the federal law intended to accomplish, and construing that law in such a manner as to carry out that intent, even if to do so requires the insertion of language. *Mason* v. *Bowerman Bros., Inc.*, 95 R. I. 425,

---

[4]Section 207(C) provides that: "If, *upon such re-examination*, it is found that the rent being charged the family no longer conforms to the approved rent schedule, the rent shall be adjusted in accordance with the approved rent schedule." (emphasis added)

431-33, 187 A.2d 772, 776-77 (1963); *New England Die Co.* v. *General Products Co.,* 92 R. I. 292, 297-98, 168 A.2d 150, 153-54 (1961).

Here the federal lawmakers intended, as we have already indicated, to provide the poor with decent housing at prices they can afford. Their plan for achieving that purpose includes a fixing of rents based not so much upon the accommodations occupied as upon the tenant's family income. It also contemplates that as income increases, so too will rent, and contrawise as income decreases.

Accordingly, if plaintiffs are correct in construing the language calling for rent adjustments as permitting a year's postponement of an otherwise due rent *increase,* it would necessarily follow that the same language would also permit a year's deferment of a rent *reduction* due a tenant whose family income has sharply decreased. The result would be that such a tenant, though clearly within the class of those intended to be advantaged by federal public housing legislation, might by reason of his financial difficulties be unable to continue his tenancy.

We refuse to read the federal law in a manner that would permit that result. To do so would strike at the very core of the philosophy upon which the federal public housing legislation is premised, and would make it impossible to deal effectively with the state of things that this legislation was intended to remedy. We reject any reading which would permit such a completely unreasonable result. *Wilkinson* v. *Harrington,* 104 R. I. 224, 229-30, 243 A.2d 745, 749 (1968); *Deignan* v. *Cowan Plastic Products Corp.,* 99 R. I. 193, 196-97, 206 A.2d 534, 536 (1965); *Genereux* v. *Pelosi,* 96 R. I. 452, 457-58, 192 A.2d 630, 633 (1963). It would be equally unreasonable to construe that law as allowing required increases to be postponed for a like period.

Alternatively, plaintiffs turn to §2(d) of the HUD

Handbook and to §204(B) of the Contributions Contract, both of which state that income limits and rents fixed by a local authority must meet the requirements of applicable local law. The plaintiffs argue that these provisions are sufficient to require any federal law in this area to yield to conflicting local rent-freeze legislation.

Were we to accept plaintiffs' contention we would, in effect, be reading the federal law as permitting a state legislature to override the provisions of the federal public housing laws and to replace them with state legislation. We would in addition be unduly hampering the authority in its administration of rent adjustments which must be promptly put into effect if the federal law is to achieve its purposes. While the language of the regulations invoked by plaintiffs may not be as clear and specific as it might be, it would nonetheless be both presumptuous and unreasonable for us to join plaintiffs in ascribing to the federal lawmakers an intention to allow their own work product to be rendered "inefficacious and nugatory" by state law. *Town of Scituate* v. *O'Rourke*, 103 R. I. 499, 509, 239 A.2d 176, 182 (1968). Accordingly, and apart from constitutional considerations, we reject any construction of the provisions relied upon which would permit local law in the circumstances here present to prevail over federal law.

Because what we have already said is dispositive of the case, we do not reach the questions raised by defendants concerning the constitutionality of the rent-freeze legislation.

The plaintiffs' appeal is denied and dismissed, and the

case is remanded to the Superior Court for further proceedings.

*Peter W. Thoms and John M. Roney,* Rhode Island Legal Services, Inc., for plaintiffs.

*Joseph J. Nicholson,* for defendants.