**Timothy M. COOK, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**BUDGET RENT–A–CAR CORPORA-TION and Transamerica Corpora-tion, Defendants.**

**No. 79 Civ. 6482.**

United States District Court,
S. D. New York.

Dec. 4, 1980.

Timothy M. Cook, pro se.

Guggenheimer & Untermyer, New York City, for defendant Budget Rent–A–Car Corp.; Robert E. Smith, Alan I. Raylesberg, Roger B. Jacobs, New York City, of counsel.

Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., for defendant Transamerica Corp.; James H. Benney, Steven F. Greenwald, San Francisco, Cal., of counsel.

ROBERT J. WARD, District Judge.

Plaintiff brings this action under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The action has been discontinued with prejudice as to defendant Transamerica Corporation by an order of the Court dated June 16, 1980. The remaining defendant, Budget Rent–A–Car Corporation ("Budget"), moves to dismiss plaintiff's claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. However, since Budget has relied upon matters outside of the pleadings, the Court will treat the motion as one for summary judgment under Rule 56(b), Fed.R.Civ.P. Plaintiff cross–moves for summary judgment under Rule 56(a), Fed. R.Civ.P. For the reasons hereinafter stated, summary judgment is granted in favor of Budget. Plaintiff's cross–motion for summary judgment is denied.

## Background

Budget is a wholly–owned subsidiary of Transamerica Corporation. It is engaged in the business of renting automobiles to the general public, mostly through franchises to local dealers. Plaintiff alleges that he is handicapped, but that his impairment does not affect his ability to operate a motor vehicle. He has been a licensed driver since 1970. Plaintiff further alleges that, during 1979, a Budget franchisee named George R. Bunch refused to rent an automobile to plaintiff solely because of his handicap.

Plaintiff contends that these allegations state a claim for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). He seeks compensatory and punitive damages, as well as injunctive relief, for the alleged violation. The relevant portion of Section 504 reads as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service. . . .

An action will lie against a private party under Section 504, then, only if that party is a recipient of "Federal financial assistance." Budget contends that the material facts necessary to determine whether it receives Federal financial assistance are not in genuine dispute, and that summary judgment should be entered in its favor because these facts show that Budget does not receive Federal financial assistance. The question before the Court on Budget's instant motion is thus simply whether Budget is a recipient of Federal financial assistance within the meaning of Section 504.[1]

---

1. Budget also argues that, even if it were a recipient of Federal financial assistance, plaintiff would not have a viable action because plaintiff is not an "intended beneficiary" of the automobile rental contracts which would constitute that Federal financial assistance. *Cf. Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672, 674–75 (8th Cir. 1980), *cert. denied,* - U.S. - -, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980) (imposing nexus requirement under Section 504 in context of employment discrimi-

nation action). *Given the Court's conclusion that Budget was not a recipient of Federal financial assistance, the Court need not reach this issue. The nexus rule has been applied only in the context of employment discrimination, and its application in that context is a subject of controversy. See United States v. Cabrini Medical Center,* 497 F.Supp. 95 (S.D.N.Y.1980), *appeal docketed,* No. 80–6166 (2d Cir. Aug. 25, 1980). The Court would be unwilling to extend this rule to the present situation,

Budget has conceded in answers to interrogatories filed with the Court that it receives funds from the federal government under automobile rental contracts which it has with a number of federal agencies.[2] These contracts, and the payments received by Budget on account of them, are the sole basis for plaintiff's contention that Budget is a recipient of Federal financial assistance under Section 504. Accordingly, unless these contracts constitute Federal financial assistance within the meaning of the statute, Budget cannot be subjected to liability under Section 504, and Budget's motion for summary judgment must be granted.

### Discussion

■ The task before the Court is plainly one of statutory interpretation. The term "Federal financial assistance" is not defined by the Rehabilitation Act of 1973 ("the Act"). The Court has not been apprised, either by the parties or by virtue of its own research, of any case dealing with this issue in any great detail.[3] The question is thus essentially one of first impression, requiring the Court to consider the language and the

administrative interpretations of Section 504, the legislative history of Section 504, the prevailing interpretation of any related statutes, and the general purposes of the Act.

### A. Language and Administrative Interpretations of Section 504

The Court notes, with regard to the language of Section 504, that it finds the use of the specific word "assistance" to be most striking. This word connotes such transactions as a transfer of government funds by way of a subsidy, or a sale of government assets at reduced consideration. "Assistance" does not on its face impress the Court as comprehending "procurement contracts," that is, contracts in which goods or services are sold or purchased by the government for its own account at fair market value. There is no suggestion in the present case that the government paid greater than fair market value under its automobile rental contracts with Budget.[4] Accordingly, if Section 504 is given what the Court views to be its plain meaning, Budget is not a recipient of Federal financial assistance.

---

principally because it can think of no one save Budget and the federal government who would qualify as "intended beneficiaries" of Budget's contracts. It would be absurd to hold that, while such contracts are Federal financial assistance, no individual has standing to maintain an action with respect to that assistance.

2. Budget has automobile rental contracts with the Department of Agriculture, the Department of Justice, the Department of the Interior, the Department of Defense, the Department of Housing and Urban Development, and the National Aeronautics and Space Administration. Each of these agreements has been effective at least since 1979 and is terminable at will. Budget estimates that it has received an aggregate amount of $5,000 on account of these contracts.

3. In *Rogers v. Frito–Lay, Inc.*, 433 F.Supp. 200 (N.D.Tex.1977), *aff'd on other grounds*, 611 F.2d 1074 (5th Cir. 1980), *cert. denied*, —— U.S. ·, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), plaintiff charged defendant Frito–Lay with a violation of Section 504. Frito–Lay's only receipts of federal funds involved transactions in which goods or services were sold to the government for their fair market value. *Id.* at 202. Judge Taylor, referring only to the wording of the statute, held that such transactions

could not constitute Federal financial assistance because the term "refers to the form of grant assistance that goes primarily to public entities." *Id.* at 204. *Simpson v. Reynolds Metal Co.*, 629 F.2d 1226 (7th Cir. 1980), involved a claim of employment discrimination under Section 504. Plaintiff contended that Reynolds could be found a recipient of Federal financial assistance on the basis of its contracts with federal agencies and departments for the procurement of goods and services, and also its apprenticeship program funded through the Veterans Administration. *Id.* at 1229. The court did not decide the Federal financial assistance issue, holding that plaintiff's claim was barred because of the absence of any nexus between the alleged assistance and the alleged harm suffered by plaintiff. *Id.* at 1232; *see* note 1 *supra*. However, it is instructive to note that, while the court was willing to assume for the purposes of analysis that the apprenticeship program constituted Federal financial assistance, it made no such assumption with respect to the contracts with federal agencies. *Id.* at 1231–32.

4. Indeed, counsel for Budget advised the Court at oral argument that these contracts afford the government a special discount rate.

*See Rogers v. Frito–Lay, Inc.,* 433 F.Supp. 200, 204 (N.D.Tex.1977), *aff'd on other grounds,* 611 F.2d 1074 (5th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980) (ruling, solely on basis of plain meaning of term, that "Federal financial assistance" under Section 504 "does not comprehend government contracts but rather refers to the form of grant assistance that goes primarily to public entities").

The Court is also strongly influenced by the administrative interpretations of the term "Federal financial assistance." The Department of Health, Education, and Welfare ("DHEW") was directed to coordinate the issuance of regulations effectuating the Act by Exec. Order No. 11,914, 41 Fed.Reg. 17,871 (1976), *reprinted in* 29 U.S.C. § 794 app. DHEW's regulations under the Act are codified in 45 C.F.R. pt. 84 (1979). These regulations define "Federal financial assistance" as follows:

"Federal financial assistance" means any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance in the form of:

(1) Funds;

(2) Services of Federal personnel; or

(3) Real and personal .property or any interest in or use of such property, including:

(i) Transfers or leases of such property for less than fair market value or for reduced consideration; and

(ii) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.

45 C.F.R. § 84.3(h)(1979). Similar regulations have been issued or proposed by other departments and agencies of the federal government, including each of the government entities with which Budget has automobile rental contracts.[5]

As the Court reads the DHEW regulation, Budget's government contracts do not constitute "Federal financial assistance." Budget's agreements with federal departments and agencies are undoubtedly "contracts" within the meaning of the regulation. There is no need to decide what the regulation means by the term "procurement contract."[6] The regulation makes it clear that the important question is whether Budget's contracts are arrangements by

---

**5.** The federal departments and agencies with which Budget has contracts are listed in note 2 *supra.* For the regulations promulgated or proposed by these entities, see 14 C.F.R. § 1251.-102(f)(1980) (National Aeronautics and Space Administration); 45 Fed.Reg. 37,620, 37,626 (1980) (Department of Justice; to be codified in 28 C.F.R. § 42.540(f)); 45 Fed.Reg. 24,074, 24,-076 (1980) (Department of the Interior; proposed to be codified in 43 C.F.R. § 17.202(h)); 44 Fed.Reg. 58,750, 58,750 (1979) (Department of Defense; proposed to be codified in 32 C.F.R. § 56.3(b)); 44 Fed.Reg. 4620, 4621 (1979) (Department of Agriculture; proposed to be codified in 7 C.F.R. § 15b.3(i)); 43 Fed.Reg. 16,652, 16,656 (1978) (Department of Housing and Urban Development; proposed to be codified in 24 C.F.R. § 8.3(h)).

**6.** The Court believes that DHEW intended for "procurement contract" to have the same narrow meaning which the Court assigned it above, namely, a contract in which goods or services are sold or purchased by the government for its own account at fair market value. It is arguable that DHEW intended for the term to have a broader meaning. On its face, the DHEW regulation appears first to create a gen-

eral test for finding Federal financial assistance, and then to exempt "procurement contracts" and "contracts of insurance or guaranty" from application of the test and hence from ever being considered to be Federal financial assistance. This wording suggests that, in DHEW's view, "procurement contracts" would (absent the exemption) in some cases constitute Federal financial assistance. However, DHEW has explained that its reasons for excluding "procurement contracts" from Federal financial assistance were, like those of the Court, based purely on the sense that "procurement contracts" are not "assistance." *See* 45 C.F.R. pt. 84, app. A, subpt. A(2) (1979) ("[DHEW] has never considered [procurement] contracts to be contracts of assistance"). As noted above, while the Court accordingly views "procurement contract" to have the same meaning under the DHEW regulation as the Court gives it in this opinion, this conclusion is unnecessary to the Court's conclusion that, under the terms of the DHEW regulation, Budget is not a recipient of Federal financial assistance.

which the government "provides or otherwise makes available assistance" to Budget. "Assistance" is the crucial word, and is explained by the regulation in a manner which is most illuminating with respect to the present controversy. The regulation says that assistance can include a lease of government property for less than its fair market rental value. 45 C.F.R. § 84.-3(h)(3)(i) (1979). Plainly, the inference to be drawn is that assistance does not include transactions where government property is leased for an amount equivalent to its fair market rental value. Since there is no "assistance" under the regulation where the government *lets* property at its fair market rental value, it is plain to the Court that there is no "assistance" where the government *hires* property at its fair market rental value. In view of the fact that the instant case is precisely one where the government merely hires property from Budget at its fair market rental value, Budget is not a recipient of Federal financial assistance under the DHEW regulation.[7]

Plaintiff suggests that the DHEW regulation should not be given any interpretive weight because it represents only DHEW's enforcement policy with respect to Section 504, and not a substantive interpretation of the requirements of the Act. The Court is unable to agree with this conclusion in light of DHEW's interpretive analysis of the final regulation. *See* 45 C.F.R. pt. 84, app. A (1979). In explaining its definition of Federal financial assistance, DHEW gave no hint that its interpretation of the term was motivated by enforcement concerns. Indeed, DHEW noted that it had added the procurement contracts exception to the definition, not to make the regulation simpler to enforce, but rather because "[t]he Department has never considered such contracts to be contracts of assistance." *Id.* at subpt. A(2). Moreover, throughout its analysis DHEW was careful to note instances where the terms of the regulation were motivated by a concern to ease its enforcement burden. *See, e. g., id.* at subpt. A(1), (7).

■ As plaintiff points out, the plain language of Section 504 and the administrative interpretations consistent with that language are not inevitably controlling of the question before the Court. The Court must also consider the legislative history of Section 504, and the general purpose behind the statute of which it is a part, in order to decide the purpose of Congress in enacting it. Reference to related statutes and their interpretations is also appropriate. But it cannot be gainsaid that plaintiff faces a heavy burden indeed in attempting to overcome the effect of the plain meaning of the statutory language and DHEW's wholly consistent interpretation of that language. It is fundamental that words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary. *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975); *see Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979) (starting

7. The Court's interpretation of the DHEW regulation is fortified by reference to the regulations promulgated by the Department of Labor under Section 503(a) of the Act. Section 503(a) basically requires that any government procurement contract in excess of $2,500 include a provision whereby the procurement contractor agrees to take "affirmative action" to employ handicapped individuals to perform the contract. 29 U.S.C. § 793(a). While Section 503(a) mentions only affirmative action, it is clear that Congress intended for nondiscrimination to be a component of a procurement contractor's employment obligation. S.Rep. No. 318, *supra,* at 50, U.S.Code Cong. & Admin. News 1973, p. 2076; *see* 41 C.F.R. § 60–741.-4(a) (1979). The Department of Labor's regulations under Section 503(a) apply to "government contracts," which are expressly defined not to include "federally–assisted contracts." *Id.* § 60–741.2. If the Court accepted plaintiff's proposition that all federal contracts are contracts of "assistance," it would be required to read the Department of Labor's regulations under Section 503(a) as a nullity, since by their terms these regulations apply only to federal contracts which are not contracts of assistance. The Department of Labor has recently issued regulations under Section 504 which, while differing from the DHEW regulation in some respects, adopt its definition of Federal financial assistance. 45 Fed.Reg. 66,706, 66,709 (1980) (to be codified in 29 C.F.R. § 32.3).

point for interpretation of Section 504 is language of statute). Further, it is settled that a construction of a statute by a department charged with its administration (as DHEW is here) should be followed unless there are compelling indications that it is wrong. *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973); *cf. Southeastern Community College, supra*, 442 U.S. at 411, 99 S.Ct. at 2369 (finding such compelling indications in context of DHEW interpretation of Section 504, where this interpretation conflicted with language as well as legislative history of Section 504). It is from the perspective of the large burden which confronts the plaintiff that the Court proceeds to consider the additional guideposts to statutory interpretation.

## B. Legislative History

The Court, in referring to the legislative history of the Act as a means of interpreting "Federal financial assistance," is hampered by what appears to be a complete absence of any bona fide legislative history for Section 504. The congressional reports published in conjunction with the enactment of the Act do nothing more than restate the wording of Section 504. *See* S.Rep. No. 318, 93d Cong., 1st Sess. 50, 70 (1973), *reprinted in* [1973] U.S.Code Cong. & Ad.News, pp. 2076, 2123 & 2143. Other issues so dominated the hearings on and floor discussion of the Act that there appears to have been almost no consideration given to the meaning or intended impact of Section 504. *See generally* Note, *Administrative Action to End Discrimination Based on Handicap: HEW's Section 504 Regulation*, 16 Harv.J.Legis. 59, 63–64 (1979).

A "legislative history" for Section 504 was ultimately provided in conjunction with passage of the Rehabilitation Act Amendments of 1974, Pub.L. No. 93–516, 88 Stat. 1617 (1974). The Senate Report accompanying these amendments illuminated the general congressional purpose in enacting Section 504, but provided no explanation of the term Federal financial assistance. *See* S.Rep. No. 1297, 93d Cong., 2d Sess. 37–41

(1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News, pp. 6373, 6388–91. It is accordingly wholly unhelpful with respect to the present inquiry.

The Act was also amended by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub.L. No. 95–602, 92 Stat. 2955 (1978). These amendments provided in part that the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d–2000d–4, would be available to any person aggrieved by a violation of Section 504. 29 U.S.C. § 794a; *see* H.R.Conf.Rep. No. 1780, 95th Cong., 2d Sess. 93 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 7312, 7375, 7404. Plaintiff refers the Court to the Senate floor debate on this portion of the amendments, specifically to the discussion of a proposal by Senator McClure which would have limited the federal government's affirmative action obligation under the amended Act. *See* 124 Cong.Rec. S15,664 (1978). Senator Cranston opposed this proposal by referring to Section 504 and concluding that, under Senator McClure's rule, the federal government would be held to a lower equal employment standard than would federal "contractors and grantees." *Id.* at S15,665. Plaintiff submits that Senator Cranston's use of the term "contractors" is "legislative history" which indicates, contrary to the plain wording of the statute and the DHEW regulation, that Budget's government contracts constitute Federal financial assistance under Section 504.

The Court cannot accept this conclusion for three reasons. First, while it is true that Senator Cranston was a co–sponsor of the Act (including Section 504) as originally enacted, the Court has great difficulty in regarding the statement of a single member of Congress, made six years after the passage of a statute, to be persuasive legislative history with respect to that statute. *See Southeastern Community College, supra*, 442 U.S. at 411 n.11, 99 S.Ct. at 2369 n.11 (post–passage remarks of legislators cannot be given great weight when determining legislative intent); *cf. Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct.

1705, 1722, 60 L.Ed.2d 208 (1979) (pre–passage remarks of single legislator, even sponsor, not controlling in analyzing legislative history). Second, Senator Cranston was, in the Court's view, speaking not only about Section 504, but also in reference to Section 503(a) of the Act, which requires federal contracts worth more than $2,500 to contain a provision obliging the contractor to "take affirmative action to employ and advance in employment qualified handicapped individuals." 29 U.S.C. § 793(a). Both Section 503(a) and Section 504 contain the norm of equal employment opportunity on which Senator Cranston laid such heavy emphasis. Further, only Section 503(a) contains an affirmative action obligation similar to the one which was the subject of the proposed amendment that sparked Senator Cranston's comments. *See Southeastern Community College, supra,* 442 U.S. at 407–12, 99 S.Ct. at 2367–2370 (holding that no affirmative action obligation is imposed by Section 504). *But cf. Camenisch v. University of Texas,* 616 F.2d 127, 133 (5th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 352, 66 L.Ed.2d 213 (1980) (failure of university to provide student with sign language interpreter services violates Section 504). Since Senator Cranston's statement about federal "contractors and grantees" was thus made in reference to both Section 503(a) and Section 504, he no more implied that Section 504 applies to "contractors" than he implied that Section 503(a) applies to "grantees." Third, even if Senator Cranston had been referring exclusively to Section 504, the Court notes that his use of the term "contractors" is in fact entirely consistent with the Court's view of the plain meaning of Section 504 and its reading of the DHEW regulation. The Court has no doubt that Section 504 can apply to "contracts," and hence to government "contractors." However, this only occurs if the contracts are "contracts of assistance," that is, contracts which are in the nature of a subsidy. While it might be assumed that Senator Cranston's comment was made in reference only to Section 504, there is no reason to assume further that he was speaking not only of contracts of assistance, but also of what the Court has defined herein as "procurement contracts."

In sum, there is nothing in the legislative history of Section 504 to indicate that the Court's view of the plain meaning of "Federal financial assistance," as confirmed by the DHEW regulation, is incorrect.

### C. Title VI

■ Plaintiff suggests that the Court refer to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d–2000d–4 ("Title VI"), in order to interpret Section 504. The Court views such reference to be entirely appropriate. Section 601 of Title VI reads as follows:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving *Federal financial assistance.*

42 U.S.C. § 2000d (emphasis supplied). Not only does Section 601 contain language very similar to that of Section 504 (including the crucial phrase "Federal financial assistance"), but the "legislative history" of Section 504, such as it is, makes it clear that Section 504 was patterned after, and intended to have a scope as broad as, Section 601. S.Rep. No. 1297, *supra,* at 39–40. Where two statutes contain the same language and share a common purpose, it is entirely proper to aid the interpretation of one by reference to the prevailing interpretation of the other. *See Northcross v. Board of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973).

Plaintiff argues that the prevailing interpretation of "Federal financial assistance" in Section 601 differs from what the Court views to be the plain meaning of the term under Section 504. The Court cannot agree. Plaintiff has not referred the Court to a single case where Section 601 was applied on the basis of what the Court has defined herein as "procurement contracts." The Court has found no such case. As under Section 504, the administrative interpretations of the term support the view

that a contract can indeed constitute Federal financial assistance, but only where it is a "contract of assistance," that is, a contract in the nature of a subsidy, and not where it is what the Court has defined to be a "procurement contract." *See, e. g.,* 45 C.F.R. § 80.13(f) (1979) (DHEW regulations under Title VI). The Court has found no disagreement with this view among the commentators on Title VI. *See, e. g.,* 2 N. Dorsen, P. Bender, B. Neuborne & S. Law, Political and Civil Rights in the United States 595 (4th ed. 1979).

Plaintiff relies on the legislative history of Title VI. In fact, the legislative history of Section 601 only confirms the Court's reading of the plain meaning of the statute. The Civil Rights Act of 1964, of which Title VI is a part, evolved from a bill drafted by the Justice Department and introduced in the House of Representatives by the Kennedy Administration in 1963. The Justice Department's draft of the bill contained the precise term "financial assistance" which became a part of Title VI and was carried over to Section 504. *See* Comment, *Title VI of the Civil Rights Act of 1964–Implementation and Impact,* 36 Geo.Wash.L.Rev. 824, 832 n.61 (1968). As is described below, the Justice Department itself made it clear from the outset that it did not view "financial assistance" to encompass "procurement contracts."

The Justice Department's bill was initially referred to Subcommittee No. 5 of the House Committee on the Judiciary. Attorney General Kennedy testified before the subcommittee and, with reference to proposed Title VI, explained that it would apply to "private enterprises [which] receive financial assistance or backing from the Federal Government." Hearings Before Subcomm. No. 5 of the House Comm. on the Judiciary, 88th Cong., 1st Sess., pt. II, at 1381 (1963) (statement of Attorney General Kennedy). Questions as to the precise scope of "Federal financial assistance" arose during the Attorney General's later testimony before the full House Committee on the Judiciary; Attorney General Kennedy there promised to submit to the committee a list of federal expenditures which would be affected by enactment of Title VI. Hearings Before the House Comm. on the Judiciary on H.R. 7152, 88th Cong., 1st Sess, pt. IV, at 2731 (1963) (remarks of Attorney General Kennedy). Such a list was submitted to the committee by Deputy Attorney General Katzenback. The Deputy Attorney General supplemented the list with an explanatory letter, which flatly stated that "ordinary Government procurement is not considered to be subject to Title VI." Letter from Nicholas deB. Katzenbach, Deputy Attorney General, to Hon. Emanuel Celler, Chairman, Committee on the Judiciary, House of Representatives (December 2, 1963), *reprinted in* 110 Cong.Rec. 13,380 (1964). The Deputy Attorney General explained that while such direct activities of the federal government might confer an economic benefit on the contractors in question, "such benefit is not considered to be financial assistance to a program or activity within the meaning of Title VI." *Id.* If any doubt remained concerning whether procurement contracts constituted Federal financial assistance, it was dispelled during the Senate debate on the bill in 1964, when the Attorney General himself wrote that "Title VI does not apply to procurement contracts, or to other business contracts which do not involve financial assistance by the United States." Letter from Robert Kennedy, Attorney General, to Hon. John Sherman Cooper (Apr. 29, 1964), *reprinted in* 110 Cong.Rec. 10,075, 10,076 (1964).

### D.  Purpose of the Act

█ Plaintiff reminds the Court that Section 504 is part of a civil rights statute, and as such should be construed broadly so as to effectuate its remedial purpose. The Court recognizes that the Act is part of the general corpus of discrimination law. *New York State Association for Retarded Children, Inc. v. Carey,* 612 F.2d 644, 649 (2d Cir. 1979). Also, the Court is well aware that civil rights statutes should be accorded a sweep as broad as their language and remedial purpose. *See Griffin v. Breckenridge,* 403 U.S. 88, 97, 91 S.Ct. 1790, 1795, 29 L.Ed.2d 338 (1971). However, as noted

above, the Court does not read the language of the statute to subject federal procurement contractors to the prohibitions of Section 504. Nor does the Court view the Act as a whole to have the broad remedial purpose which plaintiff ascribes to it. Plaintiff compares the congressional purpose in enacting the Act to that which motivated passage of the Civil Rights Act of 1964. However, the latter act plainly had a broader remedial purpose; for example, Title VII of the Civil Rights Act of 1964 prohibits employment discrimination by any employer of significant size, whereas Section 503(a) of the Act affects only those employers who contract with the federal government. *See Simpson v. Reynolds Metal Co.*, 629 F.2d 1226, 1243 n.32 (7th Cir. 1980). Since, as discussed above, even the Civil Rights Act of 1964 was not intended to cover procurement contractors in a context such as the present one, the Court's interpretation of the narrower statute on which plaintiff relies cannot fairly be said to trammel on the remedial purpose of that statute. The wrong of which plaintiff complains is not one for which the Act provides, or was intended to provide, a remedy.

### Conclusion

■ Under both the language of Section 504 and the administrative interpretations of that language, Budget is not a recipient of Federal financial assistance. Analysis of Title VI, the statute after which Section 504 was patterned, supports this conclusion. This conclusion is not at odds with anything in the legislative history of the Act or with its broad remedial purpose.

Accordingly, plaintiff has no claim against Budget under Section 504 because Budget is not a recipient of Federal financial assistance. Budget's motion for summary judgment is thus granted pursuant to Rule 56(b), Fed.R.Civ.P. Plaintiff's cross–motion for summary judgment is denied. The complaint is dismissed.[8]

It is so ordered.

---

8. Plaintiff's complaint also presents a pendent state claim for intentional infliction of mental and emotional distress. In view of the fact that plaintiff's federally based claim must be dismissed prior to trial, his pendent claim must also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).