Thomas J. LEMMO, Plaintiff,

v.

Reg. S. WILLSON, individually and in his official capacity as Administrator, Wilbur L. Scheller, individually and in his official capacity as Chairman, Richard L. Nielsen, individually and in his official capacity as Secretary, and John Does 1–30, individually and in their official capacities as officers and members of the Colorado Carpenters State-Wide Joint Apprenticeship and Training Committee, and the Colorado Carpenters Statewide Joint Apprenticeship and Training Committee, Defendants.

Civ. A. No. 82–K–404.

United States District Court,
D. Colorado.

April 12, 1984.

Bruce A. Lampert, Richard F. Schaden, P.C., Denver, Colo., for plaintiff.

Donald J. Mares, Law Offices of John W. McKendree, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This action alleges discrimination on the basis of handicap in a carpenter's apprenticeship program. Plaintiff is a handicapped individual who suffers from a slight loss of hearing and reduced sense of balance. In July 1978, plaintiff entered into an apprenticeship contract with the defendant, Colorado Carpenters Statewide Joint Apprenticeship Educational and Training Committee (JATC), to perform work and obtain instruction as a carpenter. On November 9, 1979 he was injured on the job and then placed on temporary illness suspension. In July 1980, after eight months of medical treatment, plaintiff submitted to defendant a return to work release form signed by his treating physician. Defendant refused to allow plaintiff to be placed on the out of work list for apprentice carpenters on the grounds that plaintiff could not return to work until he obtained a "without restrictions" release from his doctor.

In his original complaint, plaintiff asserted the following claims against JATC: 1) violation of sections 503 and 504 of the Rehabilitation Act, 2) violation of 42 U.S.C. § 1983, 3) breach of fair representation by union representatives, 4) breach of contract, and 5) violation of Colorado Civil Rights Act. I dismissed his claim under section 503 of the Rehabilitation Act in July of 1982. Since that date, plaintiff has stipulated to the dismissal of his claim under 42 U.S.C. § 1983 and his claim for breach of fair representation by union representatives.

This matter is now before me on two separate motions for summary judgment. The first was filed by Wilbur Scheller, chairman of the Colorado Carpenters Statewide Joint Apprenticeship Educational and

Training Committee (JATC). The second was filed on behalf of all the remaining defendants in this action. After careful consideration of the briefs supporting and opposing these motions, I conclude that they should be granted.

## I. FEDERAL FINANCIAL ASSIST-ANCE UNDER THE REHABILI-TATION ACT

Plaintiff argues that JATC receives federal financial assistance as the term is defined in the Rehabilitation Act, 29 U.S.C. § 794, because it is "deeply enmeshed in the routing of apprentices to federal projects as well as certifying the non-discrimination practices of both the apprenticeship committee and its employer members." Brief in Opp. at 5.

### A. FEDERAL PROJECTS

According to plaintiff, JATC is a de facto employer of all Colorado carpenter apprentices and regulates an apprentice's access to government contractors and subcontractors. One of the defendants, Reg Willson, admits in his deposition that many of the contractors who employ JATC apprentices work on federal projects. Plaintiff argues that since those contractor-employers are clearly subject to section 504 of the Rehabilitation Act and to the affirmative action requirements of section 503, JATC is also subject to the requirements of the Act.

Section 504 makes it unlawful for otherwise qualified handicapped individuals to "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" solely because of their handicaps. 29 U.S.C. § 794 (1982); 45 C.F.R. § 84.4 (1983). An action will lie against a private party under section 504 only if that party is a recipient of federal financial assistance. *See Cook v. Budget Rent A Car Corp.,* 502 F.Supp. 494, 495 (S.D.N.Y.1980). I must therefore determine if JATC's "routing" of apprentices to federal contractors constitutes the receipt of federal financial assistance under section 504.

The term federal financial assistance as used in section 504 of the Rehabilitation Act has been defined as:

Any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance in the form of:

(1) Funds

(2) Services of Federal personnel; or

(3) Real and personal property or any interest in or use of such property,

. . . .

45 C.F.R. § 84.3 (1983).

 I conclude that JATC's regulation of an apprentice's access to jobs with federal contractors does not constitute federal financial assistance. In reaching this conclusion, I am persuaded by the opinion in *Cook v. Budget Rent A Car Corp.,* 502 F.Supp. 494 (S.D.N.Y.1980).

The plaintiff in *Budget* brought an action under the Rehabilitation Act against Budget Rent A Car Corporation, a car rental agency, on the grounds that a Budget franchise refused to rent an automobile to plaintiff solely because of his handicap. Plaintiff alleged that Budget was a recipient of federal financial assistance under section 504 because it received funds from the federal government under automobile rental contracts which it had with a number of federal agencies. 502 F.Supp. at 496. The court granted summary judgment in favor of Budget on the grounds that the government was not making federal financial assistance available to Budget by renting its cars:

Plainly, the inference to be drawn is that assistance does not include transactions where government property is leased for an amount equivalent to its fair market rental value. Since there is no 'assistance' under the regulation where the government *lets* property at its fair market value, it is plain to the court that there is no 'assistance' where the government *hires* property at its fair market rental value. In view of the fact that the

instant case is precisely one where the government merely hires property from Budget at its fair market value, Budget is not a recipient of Federal financial assistance under the DHEW regulation. 502 F.Supp. at 498.

The circumstances in this case are totally dissimilar to the facts of *Budget.* Unlike Budget, plaintiff has not shown that JATC is receiving money for placing its apprentices in jobs with federal contractors. Even if JATC were being compensated by the federal contractors for employing its apprentices, however, the rule in *Budget* that there is no "assistance" where the government hires property at its fair market value would apply. Thus, the fact that JATC's apprentices may work for federal contractors does not constitute the receipt of financial assistance under section 504.

### B. CERTIFICATION BY FEDERAL AGENCIES

According to plaintiff, federal financial assistance can consist of the application for and certification of programs by agencies of the federal government. Plaintiff also argues that the registration and certification of JATC's apprenticeship program by the Department of Labor's Bureau of Apprenticeship and Training constitutes federal financial assistance as the term is defined in 34 C.F.R. § 104.3(g).

Plaintiff cites no cases and I find none which hold that the certification of programs by the federal government constitutes the receipt of financial assistance under the Rehabilitation Act. Plaintiff also fails to show how JATC's apprenticeship program received financial assistance after it was certified. The fact that it is certified by the Department of Labor alone does not constitute federal financial assistance and does not raise an issue of fact precluding summary judgment.

■ Plaintiff's reference to 34 C.F.R. § 104.3(g) for the definition of federal financial assistance is inconsequential. That section deals with discrimination under any program or activity receiving assistance from the Department of Education. Plain-

tiff has not alleged nor do I find that JATC is funding its apprenticeship program through the Department of Education. The correct statutory definition of federal financial assistance and the one which governs this controversy is found in 49 C.F.R. § 84.3 (1983). Thus, certification of JATC's apprenticeship program by a federal agency does not constitute federal financial assistance under section 504.

### II. STANDING TO SUE UNDER THE REHABILITATION ACT

### A. CETA FUNDS

Plaintiff has produced JATC's financial report for 1982 which states that JATC received $63,171 in CETA income in 1982. Defendant admits that it used CETA funds in connection with its preapprenticeship program, but contends that plaintiff was not a participant in that program and therefore cannot sue under section 504 because he was not an intended beneficiary of those funds.

■ The receipt of CETA funds does constitute "federal financial assistance" under section 504 of the Rehabilitation Act. A plaintiff who sues his employer under that provision, however, must show that he is an intended beneficiary of the federal financial assistance received by his employer or that the discrimination directed against him affected beneficiaries of such aid. *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226 (7th Cir.1980). *See also Carmi v. Metropolitan St. Louis Sewer District,* 620 F.2d 672, 674 (8th Cir.), *cert. denied,* 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980).

The plaintiff in *Simpson* brought suit against Reynolds Metals Company under sections 503 and 504 of the Rehabilitation Act alleging that he was unlawfully discharged because of alcoholism. The court affirmed the district court's dismissal of his section 504 claim on the ground that he failed to establish "any nexus between his discharge and the federal assistance." 629 F.2d at 1232. Essentially, plaintiff failed

to show that he was a participant in any program receiving federal financial assistance or that his discriminatory discharge denied him the benefits of the federal assistance. 629 F.2d at 1231.

█ Mr. Lemmo does not dispute the fact that he was not involved in the preapprenticeship program. He asserts that he has standing to sue by virtue of his involvement in the apprenticeship program, yet fails to show how CETA funds were used to run that program. I assume that he is advancing the "unified entity approach," as a basis for his section 504 claim. According to that theory, "once some part of an entity becomes involved in a program or activity receiving federal financial assistance, the employment practices of the entire institution [become] subject to ... § 504." *Simpson*, 629 F.2d at 1233 n. 12. This argument, however, was rejected by the Fifth Circuit in *Brown v. Sibley*, 650 F.2d 760 (5th Cir.1981);

> Accordingly, on the basis of the language of section 504 and its legislative history, and on the strength of analogies to Title VI and Title IX, we hold that it is not sufficient for purposes of bringing a discrimination claim under section 504, *simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc.* A private plaintiff in a section 504 case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance. (emphasis added)

659 F.2d at 769.

I also reject the united entity approach. Plaintiff does not have standing to sue under section 504 merely because JATC used CETA funds to finance its preapprenticeship program. Plaintiff's cause of action depends on whether CETA funds were used to finance the apprenticeship program. As plaintiff has made no showing that the funds were used for that program, he lacks standing to sue under section 504.

## B. VETERANS BENEFITS

Plaintiff also alleges standing to sue on the ground that other apprentices in the apprenticeship program received federal financial assistance in the form of veterans benefits. In support of his position, plaintiff cites the case of *Bob Jones University v. Johnson*, 396 F.Supp. 597 (D.S.C.1974), *aff'd*, 529 F.2d 514 (4th Cir.1975) where according to plaintiff the court held that whether cash payments were made to the university or to the eligible veterans themselves was immaterial in that the funds ultimately reached the same beneficiaries and were a benefit to the university. 396 F.Supp. 602, 603. By that rationale, plaintiff seeks to persuade me that the veterans benefits received by various apprentices benefit JATC's apprenticeship program as a whole. Thus, so it is presented, plaintiff has standing to sue under section 504 as he was involved in the apprenticeship program.

█ Plaintiff's argument fails, not only because he was never qualified to receive veterans benefits, but also because he has not shown that JATC's failure to place him on the out of work list affected the status of apprentices receiving those benefits. *See Simpson*, 629 F.2d 1226 (plaintiff must show that discrimination directed against him affected beneficiaries of aid). The fact that some apprentices received veterans assistance while plaintiff was an indentured apprentice will not support a cause of action under section 504.

## III. PENDENT CLAIMS

As plaintiff lacks standing to assert a section 504 claim against these defendants, I conclude that the pendent claims for breach of contract and violation of the Colorado Civil Rights Act should be dismissed. *See Gray Moving & Storage, Inc. v. Fichback*, 516 F.Supp. 1165, 1167 (D.Colo.1981) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Plaintiff may seek relief in state court.

IT IS THEREFORE ORDERED that:

Wilbur L. Scheller's motion for summary judgment is granted. The motion for summary judgment filed on behalf of the other defendants is also granted. The pendent claims for breach of contract and violation of the Colorado Civil Rights Act are dismissed. The trial date of July 23, 1984 is vacated.