THOMPSON, C.J.
Dennis Coulter, J. Larry Hooper, L.C. Dairy, Inc., and Wabasso Road Dairy, Inc., appeal an order of the St. Johns River Water Management District (district). We affirm.
The district and Willowbrook Coal Company, a Pennsylvania corporation, entered a contract whereby Willowbrook sold the district a 2800 acre parcel of land in fee (the non-dairy parcel) and a conservation easement across the adjacent 2800 acre parcel (the dairy parcel). The contract provided that dairy cows had to be removed from the dairy-parcel before the sale closed, and prohibited concentrated animal feeding operations, including dairy operations, on the parcel. This contract was contingent upon the district’s entering a contract with the United States Department of Agriculture (USDA).
At the same time the agreement with Willowbrook was being negotiated, the dis *268 trict was negotiating with the National Resource Conservation Service of the USDA. The USDA was interested in purchasing a 30-year conservation easement across the non-dairy parcel as part of a federally funded program known as the Wetlands Reserve Program. Before the district and Willowbrook closed on their contract, the USDA agreed to purchase from the district a conservation easement across the non-dairy parcel for $4.2 million. The USDA transferred $4.2 million to the district’s Land Acquisition Revenue Bonds Project Funds Account. Four days after the transfer, the district/Willowbrook sale closed, and immediately thereafter the district/USDA sale closed.
The appellants, apparently unrelated to the seller, operated the dairy farm. Pursuant to the terms of the district/Willow-brook agreement, the appellants moved their dairy operations and incurred considerable expense in doing so. They requested relocation assistance from the district under the Uniform Relocation Assistance Act (URA), 42 U.S.C. section 4601 et seq., and section 421.55 Florida Statutes. Section 4622[1] of the URA requires federal agencies to provide relocation assistance to displaced persons. Section 4630[2] of the URA precludes a federal agency from providing federal funds for state projects unless the head of the federal agency receives assurance that the state “displacing agency” will provide assistance to displaced persons. Section 421.55, Florida Statutes, authorizes state agencies to provide relocation assistance.[3] In sum, the federal statutes mandate relocation assis *269 tance for persons dislocated by certain federal programs, and preclude federal funding for state programs unless the federal government is assured that the state will provide assistance to dislocated persons. Section 421.55, Florida Statutes, authorizes state agencies to provide relocation assistance within the meaning of the federal act.
The instant case turns on whether the district received a grant, loan, or contribution from the federal government. A “displacing agency” is:
any Federal agency carrying out a program or project, and any State, State agency, or person carrying out a 'program or project with Federal financial assistance, which causes a person to be a displaced person.
42 U.S.C. § 4601(11) (emphasis added). Thus, a “displacing agency” is one that uses “federal financial assistance” to carry out its program. “Federal financial assistance” is defined as:
a grant, loan, or contribution provided by the United States.
42 U.S.C. § 4601(4).
We conclude that in the instant case the federal government did not make a “grant, loan, or contribution” to the district. As pointed out by the Administrative Law Judge below, the terms “grant” and “contribution” suggest a donation or subsidy, and the term “loan” suggests the temporary use of federal funds. Here, the federal government did not provide a loan to the district. The fact that the federal government transferred the purchase money to the district a few days before the sale closed does not make the transaction a loan: the USDA did not need to put the money in escrow pending the district’s execution of the easement, because the district is a governmental entity. The federal government did not provide the district a subsidy, but paid $4.2 million for a 30-year conservation easement across the nondairy parcel, and there is no suggestion in the record that the amount paid was less *270 than the fair market value of the easement. And, as pointed out by the Administrative Law Judge, the Wetlands Reserve Program does not authorize any grants, loans, or contributions. Instead, the ÜSDA is prohibited from paying more than fair market value for easements:
(f) Compensation
Compensation for easements acquired by the secretary under this part shall be made in cash in such amount as is agreed to and specified in the easement agreement, but not to exceed the fair market value of the land less the fair market value of such land encumbered by the easement.
16 U.S.C. § 3837a(f).
We do not think that the district’s sale of an easement across the non-dairy parcel makes the district a displacing agency under the URA, because the district did not receive “federal financial assistance” in the form of a “grant, loan, or contribution.” Cf. Cook v. Budget Rent-A-Car Corp., 502 F.Supp. 494 (S.D.N.Y.1980) (construing the Rehabilitation Act, 29 U.S.C. § 794, and holding that a business transaction whereby the government obtains goods or services for its own account at fair market value does not constitute federal financial assistance).
AFFIRMED.
HARRIS, J., concurs and concurs specially, with opinion.
PLEUS, J., dissents without opinion.

. § 4622. Moving and related expenses
(a) General provision
Whenever a program or project to be undertaken by a displacing agency will result in the displacement of any person, the head of the displacing agency shall provide for the payment to the displaced person of—
(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency;
(3) actual reasonable expenses in searching for a replacement business or farm; and
(4) acLual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $10,000.

. § 4630. Requirements for relocation payments and assistance of Federally assisted program; assurances of availability of housing
Notwithstanding any other law, the head of a Federal agency shall not approve any grant to, or contract or agreement with, a displacing agency (other than a Federal agency), under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the displacement of any person on or after January 2, 1971, unless he receives satisfactory assurances from such displacing agency that—
(1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons, as are required to be provided by a Federal agency under sections 4622, 4623, and 4624 of this title;
(2) relocation assistance programs offering the services described in section 4625 of this title shall be provided to such displaced persons;
(3) within a reasonable period of time prior to displacement, comparable replacement dwellings will be available to displaced persons in accordance with section 4625(c)(3) of this title.

.421.55 Relocation of displaced persons
(1) It is the intent of the Legislature to authorize the state and its departments, agencies, political subdivisions, and legislatively established port and airport authorities to comply with the provisions and requirements of the Surface Transportation
*269 and Uniform Relocation Assistance Act of 1987, Pub.L. No. 100-17, in those public projects or programs for which federal or federal-aid funds are available and are used.
(2)As used in this section:
(a) "State" means the State of Florida, any department, agency or political subdivision thereof, or any port or airport authority established by the Legislature.
(b) "Public Law No. 100-17” means the Surface Transportation and Uniform Relocation Assistance Act of 1987 adopted by the United States Congress.
(c) "Displaced person” means any individual, partnership, corporation, or association that is required to move from any real property on or after March 20, 1972, as a result of the acquisition of such real property for public purposes, or who, as the result of the acquisition for public purposes of real property on which such person is conducting a business or farm operation as defined in Pub.Law No. 100-17, is required to move said business or farm operation.
(3) The state is authorized and empowered, in acquiring real property for use in any public project or program in which federal or federal-aid funds are used, to make all such relocation and other payments to or for displaced persons as are required under the provisions of Pub.Law No. 100-17, and to provide such displaced persons with relocation services and make available to them replacement dwellings, as required by Pub.Law No. 100-17.
(4) The state is authorized and empowered, in acquiring real property for use in any public project or program in which federal or federal-aid funds are used, to follow and conform with the land acquisition policies set forth in Pub.Law No. 100-17, and to pay or reimburse owners of property so acquired in the manner specified in Pub. Law No. 100-17. This authority shall include, as to federal-aid highways and airports, as a last resort, the use of eminent domain powers to acquire real property for replacement housing as required by Pub. Law No. 100-17.