RAM, by its chairperson, Lillian Benjamin, on behalf of its members and all others similarly situated, and Cora Hagler, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Barbara BLUM, individually and as Commissioner of the New York State Department of Social Services, James Krauskopf, individually and as Commissioner of the New York City Department of Social Services, and Richard Schweiker, Secretary of Health & Human Services, Defendants.

No. 82 Civ. 372 (RJW)

United States District Court, S. D. New York.

Feb. 9, 1982.

---

Arthur J. Fried, Timothy J. Casey, and Sean Delany, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. by Marion R. Buchbinder, Asst. Atty. Gen., New York City, for defendant Barbara Blum.

Frederick A. O. Schwartz, Jr., Corp. Counsel, City of New York by Debra Jaret, and Solomon Malach, Asst. Corp. Counsel, New York City, for defendant James Krauskopf.

John S. Martin, Jr., U. S. Atty. by Jonathan A. Lindsey, Asst. U. S. Atty., S. D. New York, New York City, for defendant Richard Schweiker.

ROBERT J. WARD, District Judge.

### INTRODUCTION

This action challenges the legality of the method that the State of New York has determined to employ in order to calculate the amount of an eligible family's monthly grant under subchapter IV–A of the Social Security Act, 42 U.S.C. §§ 601–15. Subchapter IV–A provides for the payment of monthly cash benefits, known as Aid to Families with Dependent Children ("AFDC"), to certain needy families that include a "dependent child," as that term is defined by Sections 406 and 407 of the Social Security Act, 42 U.S.C. §§ 606–07.

Plaintiffs are RAM, an unincorporated association located in New York State, and Cora Hagler, a resident of New York City. RAM exists to advance the interests of public assistance recipients living in New York State and includes in its membership individuals who are members of families that presently receive AFDC. Hagler's family, which includes herself and her three children, presently receives a monthly AFDC grant. Defendants are Barbara Blum, Commissioner of the New York State Department of Social Services, James Krauskopf, Commissioner of the New York City Department of Social Services, and Richard Schweiker, Secretary of the Department of Health & Human Services.

In their complaint, plaintiffs allege that the State of New York has determined to treat the amounts mandatorily deducted from the paychecks of family members (for example, amounts withheld for federal income tax purposes) as "income" that should be taken into account in calculating the amount of an eligible family's monthly AFDC grant. Plaintiffs argue that this method of calculation, if implemented, would violate certain of the provisions in the Social Security Act that govern state administration of the AFDC program. Accordingly, the complaint filed in this action seeks a permanent injunction forbidding defendants Blum and Krauskopf from implementing this method of calculation. By order to show cause, plaintiffs have moved for an order (1) certifying this action as a class action pursuant to Rule 23(c), Fed.R. Civ.P., and (2) preliminarily enjoining defendants Blum and Krauskopf, pursuant to Rule 65(a), Fed.R.Civ.P., from implementing the method of calculation challenged by plaintiffs. For the reasons hereinafter stated, plaintiffs' motion is granted.

### BACKGROUND

A brief recitation of certain background facts is necessary before discussing the merits of plaintiffs' motion. On August 13, 1981, the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97–35, 95 Stat. 357

(1981), was enacted into law. Sections 2301 through 2321 of this act made significant amendments in the federal statutory provisions governing the AFDC program, including those provisions that determine the amount of an AFDC-eligible family's monthly grant. See 95 Stat. 843–60 (1981).

On September 21, 1981, the Department of Health & Human Services ("DHHS") issued interim regulations designed to implement these amendments. See 46 Fed. Reg. 46,750–73 (1981). The interim regulations, which have since been made final, see 47 Fed.Reg. 5648–86 (1982), extensively amended 45 C.F.R. § 233.20 (1980), entitled "Need and Amount of Assistance," the provision that sets forth the method to be used to determine (1) whether a family is eligible to receive AFDC, and (2) the amount of an AFDC-eligible family's monthly grant.

In an Administrative Directive dated December 9, 1981 (hereinafter "ADM 81–55"), defendant Blum informed "local social services departments," as that term is defined in N.Y.Soc.Serv.Law § 2.17, of how, in the State of New York's view, the AFDC program should henceforth be administered in order to comply with the Omnibus Budget Reconciliation Act of 1981 and the DHHS regulations issued thereunder. ADM 81–55 instructed local social services departments, inter alia, that amounts mandatorily deducted from the paychecks of family members are "income" that should be taken into account in calculating the amount of an eligible family's monthly AFDC grant. In early January of 1982 the New York City Department of Social Services, which is a "local social services department" within the meaning of the New York Social Services Law, see N.Y. Social Services Law § 61.1, commenced taking the administrative steps necessary to put this instruction into effect.

The instant action was commenced on January 20, 1982, when plaintiffs filed their complaint in this court. The complaint named only Blum and Krauskopf as defendants. In an order dated January 20, 1982, the Court scheduled a hearing on plaintiffs' motion for class certification and a prelimi-

nary injunction, and, pending the hearing, restrained defendants Blum and Krauskopf, pursuant to Rule 65(b), Fed.R.Civ.P., from implementing, with respect to any member of the plaintiff class, the State of New York's decision that amounts mandatorily deducted from the paychecks of family members should be treated as "income" to be taken into account in calculating the amount of an eligible family's monthly AFDC grant. On the next day, by order to show cause, plaintiffs filed the class certification/preliminary injunction motion that is the subject of today's decision.

On January 27, 1982, defendant Blum moved, by order to show cause, for an order pursuant to Rule 19, Fed.R.Civ.P., joining Schweiker as a defendant in this action. This motion was granted by Judge Duffy, sitting in Part 1 of this Court, on January 27, 1982. The entry of defendant Schweiker into the case at this juncture made it impossible for the parties to brief and argue plaintiffs' class certification/preliminary injunction motion prior to the expiration of the temporary restraining order entered by the Court on January 20, 1982. Accordingly, in an order dated January 29, 1982, the Court extended its restraining order of January 20, 1982, until February 9, 1982. The Court heard oral argument on plaintiffs' class certification/preliminary injunction motion during the afternoon of February 3, 1982. At the conclusion of the argument, the Court, perceiving the case to be one of great importance, reserved decision until today in order that the parties and any reviewing court might have the benefit of a reasoned, albeit oral, decision.

## DISCUSSION

The Court's evaluation of the legal merits of plaintiffs' motion begins with a general discussion of the legal dispute that has brought the parties before the Court. Then, having the contours of the substantive legal issues raised by this action in mind, the Court proceeds to consider, in turn, the class action and preliminary injunction aspects of plaintiffs' motion.

*The Legal Dispute Between the Parties*

As noted, the legal dispute between the parties centers on the proper interpretation of certain federal statutory provisions that govern state administration of the AFDC program. The AFDC program is one of several joint federal-state public assistance programs authorized by the Social Security Act. States that elect to participate in the AFDC program provide assistance to certain needy families that include a "dependent child," as that term is defined by Sections 406 and 407 of the Social Security Act, 42 U.S.C. §§ 606–07. A certain percentage of the funds expended by state governments pursuant to the AFDC program is reimbursed by the federal government. *Id.* § 603. In return for the federal funds, state governments are required to administer their AFDC programs pursuant to a "state plan" that is in accord with the federal statutory provisions governing the AFDC program and the regulations promulgated thereunder by DHHS. *Id.* § 602.

The AFDC program is intended to provide assistance only to families that are "needy." Further, the amount of an AFDC-eligible family's monthly grant is intended to be limited to the extent of the family's "need." The statutory provisions and the DHHS regulations attempt to effectuate these purposes by requiring that the determination of an applicant family's eligibility for AFDC be made by reference to the family's income and resources, and that the calculation of the amount of an eligible family's monthly AFDC grant be made by comparing the income of the family, after certain deductions, to a dollar figure (known, in AFDC parlance, as "the standard of need") that reflects the state's view of the amount necessary to provide for the essential needs, such as food, clothing, and shelter, of a hypothetical family having the same composition as the family in question.

This lawsuit concerns the method that the State of New York has determined to employ in order to place a dollar value on the income of an AFDC-eligible family for the purpose of comparing an AFDC-eligible family's income to the relevant standard of need in order to determine the amount of the family's monthly AFDC grant. Under its new method of determining the income of an AFDC-eligible family for this purpose, the State of New York begins by determining the gross income, that is, the total monthly salary or wages, of each family member. Next, the dollar amount of each family member's gross income is reduced by a "work expense deduction" and, during the first four months of eligibility, by a "work incentive deduction." The resulting dollar amounts for the various members of the family are then added together to obtain a dollar amount that represents *family* income. The family receives an AFDC grant equal to the dollar amount, if any, by which its dollar figure for income is exceeded by the relevant standard of need.

Plaintiffs challenge the first step of the State of New York's method of calculating family income, contending that the State should take as its starting point the *net* income, that is, the total take-home pay after mandatory payroll deductions such as federal income tax withholding, of each family member. The State of New York's decision to start with gross income rather than net income is based on its interpretation of Section 402(a)(7)(A) of the Social Security Act, 42 U.S.C. § 602(a)(7)(A) ("Section 402(a)(7)(A)"), under which each state plan is required to provide that the state agency charged with administration of the AFDC program shall, in determining the amount of a family's monthly AFDC grant, "take into consideration any...income and resources [other than AFDC itself] of any child or relative claiming [AFDC]." Omnibus Budget Reconciliation Act of 1981, Pub.L.No.97–35, § 2302, 95 Stat. 844 (1981), 42 U.S.C. § 602(a)(7)(A). The issue to be decided in this action, then, is a narrow question of statutory interpretation, to wit: what is the correct meaning of the word "income" as used in Section 402(a)(7)(A)?

*Propriety of Class Certification*

■ Plaintiff's motion may be dealt with fairly briefly insofar as it seeks an order,

pursuant to Rule 23(c), Fed.R.Civ.P., certifying this action as a class action. The class that plaintiff Hagler seeks to represent consists of AFDC-eligible families who reside in New York State, who have earned income, and who either receive or apply for AFDC after December 15, 1981. For the reasons that follow, the Court has determined that this action should be certified as a class action on behalf of a class defined in this manner.

It is beyond peradventure that the four prerequisites to a class action set forth in Rule 23(a), Fed.R.Civ.P., are satisfied in the present case. None of the defendants have contended otherwise. First, since it is uncontested that there are presently about 10,000 AFDC-eligible families having earned income in New York City alone, the numerosity requirement of Rule 23(a)(1) is clearly met. Second, since all persons having earned income are subject to mandatory payroll deductions, the question of the correct meaning of the word "income" as used in Section 402(a)(7)(A) affects all AFDC-eligible families that have earned income, satisfying the Rule 23(a)(2) requirement of common issues of law or fact. Third, the State of New York's method of determining family income for the purpose of determining the amount of an AFDC-eligible family's monthly grant would, if implemented, affect plaintiff Hagler in essentially the same way as it would affect other members of the proposed class, *see* Affidavit of Timothy J. Casey, January 21, 1982, at 2, meaning that plaintiff Hagler's claim is "typical" of the claims of class members within the meaning of Rule 23(a)(3) notwithstanding the fact that each person in the proposed class would, owing to the inevitable variance in the level of earned income from person to person, probably present a unique factual situation. *See Calkins v. Blum*, 511 F.Supp. 1073, 1088 (N.D.N.Y.1981). Fourth, plaintiff Hagler, who has not been shown to have any interest divergent from the class she seeks to represent and who is represented by counsel experienced in welfare rights litigation of this sort, certainly will adequately protect the interests of the class as required by Rule 23(a)(4). *See Tunin v. Ward*, 78 F.R.D. 59, 66 (S.D.N.Y.1977).

Nor do defendants make any argument that the action is not "maintainable" as a class action within the meaning of Rule 23(b), Fed.R.Civ.P. Being an action that seeks classwide relief that would redound equally to the benefit of each class member, this action is a paradigmatic Rule 23(b)(2) suit. *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir.), *vacated on other grounds sub nom. Lombard v. Marcera*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). This is clearly the type of case where, as required by the very terms of Rule 23(b)(2), "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole."

Defendants Blum and Krauskopf contend, notwithstanding the fact that this action satisfies the prerequisites to a class action set forth in Rule 23(a) and is "maintainable" as a class action within the meaning of Rule 23(b), that the Court should decline to exercise its discretion to certify this action as a class action pursuant to Rule 23(c), Fed.R.Civ.P. Defendants reason that the relief sought by plaintiff Hagler would, if granted, inevitably protect all the members of the proposed class, meaning that class certification is unnecessary. It is, of course, well settled in this Circuit that a district judge should not certify an action as a class action, even if the Rule 23(a) prerequisites and the Rule 23(b) requirement of maintainability are satisfied, unless the movant presents some additional reason for obtaining class certification. *Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978); *Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). This rule has been consistently applied by the judges of this District, including this particular member of the Court, *see Spirt v. Teachers Insurance & Annuity Association*, 416 F.Supp. 1019, 1023–25 (S.D.N.Y.1976), to deny class certification in cases where the plaintiff had failed to persuade the judge that class certification was necessary. *See,*

*e.g., Denenberg v. Blum*, 93 F.R.D. 131 at 133–135 (S.D.N.Y.1982); *Feld v. Berger*, 424 F.Supp. 1356, 1363 (S.D.N.Y.1976).

Here, however, plaintiff Hagler has presented several reasons to certify this action as a class action. First, class certification would eliminate the substantial possibility of mootness created by the numerous ways that plaintiff Hagler could cease to be a member of the class that she seeks to represent. *See Calkins v. Blum, supra*, 511 F.Supp. at 1089; *Jamroz v. Blum*, 509 F.Supp. 953, 957 (N.D.N.Y.1981). Second, while plaintiff Hagler has not as yet suffered any decrease in AFDC payments on account of the conduct of which she complains, it appears that other members of the class that she seeks to represent may have already been affected in this way. Such class members would not be fully protected by the purely prospective relief that would afford full protection to plaintiff Hagler. *See Laurido v. Simon*, 489 F.Supp. 1169, 1173–74 (S.D.N.Y.1980). Third, defendant Blum has made no commitment, by affidavit or in any other manner, to apply any prospective relief secured by plaintiff Hagler uniformly across the proposed class. On the contrary, defendant Blum has, in the Court's view, evinced precisely the opposite intention during the brief history of this litigation. For example, she refused to stipulate to an extension of the temporary restraining order entered by the Court, which stipulation would have afforded the Court much needed additional time to prepare a decision on what it perceives to be a motion of great importance, because the temporary restraining order is not confined to plaintiff Hagler but affords what defendant Blum's counsel termed "classwide" relief. Transcript, January 20, 1982, at 19. *See generally Markel v. Blum*, 509 F.Supp. 942, 949 (N.D.N.Y.1981); *Bacon v. Toia*, 437 F.Supp. 1371, 1383 n.11 (S.D.N.Y.1977), *aff'd mem.*, 580 F.2d 1044 (2d Cir. 1978).

For the foregoing reasons, plaintiffs' motion is granted insofar as it seeks certification of this action as a class action pursuant to Rule 23(c), Fed.R.Civ.P. The class certified includes members of AFDC-eligible families who reside in New York State, who have earned income, and who either receive or apply for AFDC after December 15, 1981.

*Propriety of Preliminary Injunctive Relief*

The Court begins its analysis of the propriety of the preliminary injunctive relief sought by plaintiffs' motion by determining the standard that it should apply to decide whether such relief is warranted in this case. In this Circuit, the generally applicable standard for preliminary injunctive relief requires a showing of (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); *accord, Sperry International Trade, Inc. v. Government of Israel*, 670 F.2d 8, 11 (2d Cir. 1982). However, in a letter filed with the Court, counsel for defendant Schweiker argues that part (b)(2) of the test just recited is inapplicable where preliminary relief is sought against the federal government. *See Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d 1014, 1018 (2d Cir. 1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981). This letter proceeds to urge the Court to require a showing of at least a likelihood of success on the merits "in the event plaintiffs choose to seek [preliminary injunctive] relief against [defendant Schweiker]."

The Court accepts defendant Schweiker's counsel's legal position and hereby states that it will require more than a showing of "a fair ground for litigation" in the event plaintiffs in this action ever seek preliminary injunctive relief against defendant Schweiker. This conclusion is of no immediate significance, however, since at the present time plaintiffs seek preliminary injunctive relief only against defendants Blum and Krauskopf. These defendants have not contested plaintiffs' proposition that the Court should apply the normal standard for preliminary injunctive relief in

deciding whether to award such relief against them. Indeed, counsel for defendant Blum has expressly conceded that this is the standard that the Court should apply in her regard. Defendant Blum's Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction and Class Certification, Jan. 27, 1982, at 3. The Court, observing that the courts of this Circuit have consistently applied the normal preliminary injunction standard in the context of similar actions against defendant Blum and her predecessors, *see, e.g., Caldwell v. Blum*, 621 F.2d 491, 499 (2d Cir. 1980), *cert. denied*, 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981), including actions where the Secretary of Health and Human Services is a named defendant but not an object of the motion for a preliminary injunction, *see, e.g., Morabito v. Blum*, 80 Civ. 4584 (RJW), slip op. at 3 (S.D.N.Y. Aug. 27, 1980), accordingly holds that its analysis of the merits of the preliminary injunction branch of plaintiffs' motion is governed by the standard for a preliminary injunction set forth in *Jackson Dairy*.

■ Having determined the legal standard that governs the propriety of awarding the preliminary injunctive relief sought by plaintiff, the Court now proceeds to apply that standard to the facts of the instant case. The Court's task is substantially eased by the fact that all the defendants concede that plaintiffs will suffer irreparable harm if a preliminary injunction does not issue. The first prong of the *Jackson Dairy* test has thus been satisfied.

Turning to the second prong of the *Jackson Dairy* test, plaintiffs contend that this is a case where the balance of hardships tips decidedly toward the party seeking preliminary relief. Defendants have made a half-hearted attempt to argue this point by suggesting, on the assumption that they ultimately will prevail at trial or on a motion for summary judgment, that a preliminary injunction will cause them to make overpayments to certain AFDC recipients which, as a practical matter, will not be recoverable. In making this argument, however, defendants have wholly failed to explain why they would not be able to recover the bulk of the total mount of any overpayments by deducting appropriate amounts from subsequent AFDC payments to persons who were overpaid. Moreover, defendants have not provided the Court with any satisfactory answer to the Court's suggestion that, if plaintiffs ultimately prevail on the merits after being denied a preliminary injunction, the doctrine of sovereign immunity will prevent members of the plaintiff class from recovering the amounts that they were erroneously denied. While defendant Krauskopf enjoys no sovereign immunity protection, the New York City Department of Social Services is not responsible for making AFDC payments to non-New York City residents, and is responsible for paying only a portion of the AFDC grants to which New York City residents are entitled. In sum, given the great immediate importance of AFDC benefits to AFDC-eligible families, given the unlikelihood that AFDC-eligible families will be able to make a complete retroactive recovery of the amount of any underpayments of AFDC benefits, and given the likelihood that defendants will be able to recover the bulk of the total amount of any overpayments made to AFDC recipients, the Court concludes that this is indeed a case where the balance of hardships tips decidedly toward the party seeking preliminary relief.

Under the *Jackson Dairy* standard, then, plaintiffs are entitled to the preliminary injunctive relief that they seek if they have made a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation. As previously stated, the question at issue in this litigation is whether the word "income," as used in Section 402(a)(7)(A), means *gross* income, that is, an individual's salary or wages, or *net* income, that is, an individual's take-home pay after mandatory payroll deductions. For the reasons that follow, the Court concludes that plaintiffs have easily shown that their interpretation of the word "income" as used in Section 402(a)(7)(A) is a fair subject for litigation. Indeed, the materials presented by the parties, which are the only materials to which the Court has

been able to give serious consideration in light of the time constraints imposed by Rule 65(b), require the Court to conclude that plaintiffs' interpretation of the statute is most probably the correct one.

The parties have not referred the Court to a single judicial decision that interprets the word "income" as used in Section 402(a)(7)(A). Since the question is thus one of first impression, it will ultimately have to be resolved by reference to the traditional guideposts to statutory interpretation, namely, the language and administrative interpretations of Section 402(a)(7)(A), the legislative history of Section 402(a)(7)(A), the prevailing interpretation of statutes closely related to Section 402(a)(7)(A), and the general purposes that underlay the congressional decision to enact Section 402(a)(7)(A). *See de los Santos v. Immigration & Naturalization Service*, 525 F.Supp. 655, 660 (S.D.N.Y.1981); *Cook v. Budget Rent-A-Car Corp.*, 502 F.Supp. 494, 496 (S.D.N.Y.1980). As the Court now proceeds to explain, its preliminary review of these guideposts to statutory interpretation strongly inclines it to believe that the word "income," as used in Section 402(a)(7)(A), means *net* income, that is, take-home pay after mandatory payroll deductions.

### A. Language of Section 402(a)(7)(A)

■ It is axiomatic, of course, that the starting point for interpreting a statute is the language of the statute itself. *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Mohegan Tribe v. Connecticut*, 638 F.2d 612, 618 (2d Cir. 1980), *cert. denied*, 452 U.S. 968, 101 S.Ct. 3124, 69 L.Ed.2d 981 (1981). In applying this fundamental canon of statutory construction, words, unless otherwise defined, will be interpreted as taking their ordinary, contemporary, common meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The federal statutory provisions that govern the AFDC program do not define the word "income" as used in Section 402(a)(7)(A). The ordinary meaning of the word income is "the

money or other gain received . . . by an individual . . . for labor or services." *Webster's New World Dictionary of the American Language*, 711 (2d college ed. 1972). This definition comes closer, in the Court's view, to describing what the Court has herein defined as "net income" than it does to describing what the Court has herein defined as "gross income." However, this definition is not sufficiently unambiguous to permit the Court to say that the plain meaning of the word "income" is "net income." Thus, while the language of Section 402(a)(7)(A) cuts marginally in favor of plaintiffs' interpretation of the word "income" as used in that section, this is not a case where the language of the statute controls the interpretation of the statute.

### B. Administrative Interpretations of Section 402(a)(7)(A)

■■ A second axiom of statutory interpretation is that a construction of a statute made by an agency charged with administration of the statute is entitled to substantial deference. *United States v. Rutherford*, 442 U.S. 544, 553–54, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979); *North Haven Board of Education v. Hufstedler*, 629 F.2d 773, 777 (2d Cir. 1980), *cert. granted*, 450 U.S. 909, 101 S.Ct. 1345, 67 L.Ed.2d 332 (1981). The courts have consistently shown such deference to interpretations of the Social Security Act made by DHHS. *See, e.g., New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973). The deference given to such an administrative interpretation is heightened when the construction in question has remained consistent over a long period of time. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 600 n. 17, 101 S.Ct. 817, 823 n. 17, 66 L.Ed.2d 762 (1981).

DHHS has issued extensive regulations interpreting the federal statutory provisions that govern the AFDC program. These regulations include an entire section, entitled "Need and Amount of Assistance," that is devoted to explaining the method that the federal statutory provisions require

the states to use in calculating the amount of an eligible family's monthly AFDC grant. *See* 45 C.F.R. § 233.20. Before turning to this section of the regulations, however, the Court must review the method of calculation as it is set forth in the statute.

The statute contemplates a four-step process for calculating the amount of an eligible family's monthly AFDC grant. *First*, the state determines a dollar figure that represents the family's monthly "income," as that term is used in Section 402(a)(7)(A). This is the step at issue in the case before the Court. *Second*, the state reduces this dollar figure by a "work expense deduction" calculated in accord with 42 U.S.C. § 602(a)(8)(A)(ii) and 42 U.S.C. § 602(a)(8)(A)(iii), as those sections were enacted by Section 2301 of the Omnibus Budget Reconciliation Act of 1981. *Third*, the resulting dollar figure is further reduced by a "work incentive deduction" calculated in accord with 42 U.S.C. § 602(a)(8)(A)(iv), as that section was enacted by Section 2301 of the Omnibus Budget Reconciliation Act of 1981. (The "work incentive deduction" is only applied during the first four months of a family's AFDC eligibility. *See* Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 2301, 95 Stat. 844 (1981), 42 U.S.C. § 602(a)(8)(B)(ii).) *Fourth*, the resulting dollar figure is compared to the "standard of need" for a family of the same composition. The amount of the family's monthly AFDC grant is the amount by which the standard of need exceeds the dollar figure obtained by engaging in the first three of the four steps just recited.

As noted, the dispute that has brought the parties before the Court concerns the first step of this four-step process, that is, the proper manner for determining an AFDC-eligible family's monthly "income," as that term is used in Section 402(a)(7)(A). The section of the regulations that explains the entire four-step method of calculating an eligible family's monthly AFDC grant includes an entire subsection, entitled "Income and Resources," that is devoted to explaining the first step of the process.

*See* 45 C.F.R. § 233.20(a)(3), *as amended by* 47 Fed.Reg. 5648, 5674–76 (1982). This subsection, as amended by DHHS subsequent to the enactment of the Omnibus Budget Reconciliation Act of 1981, makes the following statement: "A State Plan for...AFDC...must...provide that, in determining need and the amount of the assistance payment,...net income...available for current use...shall be considered." 45 C.F.R. § 233.20(a)(3)(ii)(D), *as amended by* 47 Fed.Reg. 5648, 5675 (1982).

According to its regulations, then, DHHS presently defines the word "income," as used in Section 402(a)(7)(A), to mean "net income available for current use." Since mandatory payroll deductions plainly do not constitute either part of an individual's "net income" or "income available for [an individual's] current use," the DHHS definition of the word "income," as used in Section 402(a)(7)(A), is perfectly consistent with plaintiffs' interpretation of that term. Since DHHS has followed this definition of the word "income," as used in Section 402(a)(7)(A), at least since 1956, *see* Plaintiffs' Exhibit 1, this subsection of the DHHS regulations is entitled to substantial deference, and thus strongly supports plaintiffs' claim to preliminary injunctive relief.

In a brief filed with the Court in connection with plaintiffs' motion, counsel for DHHS has urged the Court to disregard the subsection of the DHHS regulations from which the Court has just quoted. The reasons for the position taken by counsel for DHHS are somewhat obscure. Counsel does not argue that the subsection quoted by the Court is erroneous, *see* Transcript, Feb. 3, 1982, at 44; nor does he suggest that this subsection is inapplicable, *see id.* at 42. Rather, he suggests that the subsection of the DHHS regulations relied upon by the Court is "more general" than certain other subsections in the regulations that he contends also apply to Section 402(a)(7)(A) and contain a definition of the word "income" that differs from the definition set forth in 45 C.F.R. § 233.20(a)(3)(ii)(D). *See* Transcript, Feb. 3, 1982, at 41.

The subsections to which counsel for DHHS refers the Court are codified in 45 C.F.R. §§ 233.20(a)(4), (a)(6), and (a)(7), *as amended by* 47 Fed.Reg. 5648, 676–77 (1982). After carefully and repeatedly reading these subsections in the context of 45 C.F.R. § 233.20(a) as a whole, the Court is frank to say that it is at an utter loss to understand the position of DHHS's counsel in regard to those subsections. *First,* it is impossible to read these subsections as applying to Section 402(a)(7)(A). By their very terms, these subsections explain the method for calculating the "work expense deduction" contemplated by 42 U.S.C. §§ 602(a)(8)(A)(ii) and (a)(8)(A)(iii), which is the *second* step of the four-step process outlined previously for calculating the amount of an eligible family's monthly AFDC grant. Reading this section of the regulations as a whole, it is plain that the *first* step of the calculation process, which involves determining an eligible family's "income" and which is the step at issue in this litigation, is governed by 45 C.F.R. § 233.20(a)(3), entitled "Income and Resources," and not 45 C.F.R. § 233.20(a)(4), entitled "Disregard of Income," 45 C.F.R. § 233.20(a)(6), entitled "Disregard of Earned Income; Definition," or 45 C.F.R. § 233.20(a)(7), entitled "Disregard of Earned Income; Method."

*Second,* even if the subsections relied upon by counsel for DHHS could be read to apply to Section 402(a)(7)(A), they do not, contrary to the assertion made by DHHS's counsel, contain anything that could be construed as a definition of the term "income" as used in Section 402(a)(7)(A). While DHHS's counsel points to the definition of the term "earned income" contained in 45 C.F.R. § 233.20(a)(6)(iii), this definition is plainly designed to explain the term "earned income" as used in 42 U.S.C. § 602(a)(8)(A). It may well be, of course, given the undeniably close relationship between Section 402(a)(7)(A) and 42 U.S.C. § 602(a)(8)(A), that the meaning of the term "earned income" as used in 42 U.S.C. § 602(a)(8)(A) is relevant to the meaning of the word "income" as used in Section 402(a)(7)(A). This is an argument that the

Court discusses later in this decision. The important point for immediate purposes is that the definition of "earned income" contained in the DHHS regulations is not a definition of the word "income" as used in Section 402(a)(7)(A).

■■ The Court recognizes that the interpretation of the DHHS regulations that it adopts herein is at odds with the interpretation urged by counsel for DHHS. In taking a position contrary to the one espoused by DHHS's counsel, the Court has not violated the principle that an agency's interpretation of its own regulation should be accorded great deference by a reviewing court. *Ballard v. Rockville Centre Housing Authority,* 605 F.2d 1283, 1286 (2d Cir. 1979); *National Wildlife Federation v. Benn,* 491 F.Supp. 1234, 1244–45 (S.D.N.Y. 1980). *First,* the Court of Appeals for this Circuit has held that where an agency files an *amicus curiae* brief setting forth its opinion as to the proper reading of one of its regulations, such an expression of opinion is not an "interpretation" within the meaning of the above-cited rule. *Ames v. Merrill Lynch, Pierce, Fenner & Smith,* 567 F.2d 1174, 1177 n. 3 (2d Cir. 1977). The brief submitted by counsel for DHHS thus carries weight here only to the extent it is persuasive in its own right. *Morabito v. Blum,* 528 F.Supp. 252, 269 n. 17 (S.D.N.Y. 1981). As already described, the Court finds the interpretation of the DHHS regulations urged by DHHS's counsel singularly unpersuasive. *Second,* even if the position urged by DHHS's counsel were an "interpretation" to which the Court owed deference under the above-cited rule, the Court observes that such an interpretation may be ignored if it is plainly erroneous. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *International Fidelity Insurance Co. v. Crosland,* 516 F.Supp. 1249, 1251 (S.D.N.Y.1981). With all due respect to counsel for DHHS, the materials before the Court at this juncture lend absolutely no support to counsel's interpretation of the DHHS regulations, leaving the Court no alternative but to hold that his interpretation is indeed plainly erroneous.

To summarize, the Court reads the DHHS regulations to define the word "income," as used in Section 402(a)(7)(A), as "net income available for current use." This definition is perfectly consistent with plaintiffs' argument that Section 402(a)(7)(A) "income" does not include mandatory payroll deductions. Given the substantial deference that the Court must give this definition, because of its source and its long-standing history, this definition stands as powerful support of plaintiffs' position on the merits and virtually establishes plaintiffs' right to the preliminary injunctive relief that they seek.

Concededly, the DHHS definition of the meaning of the word "income" as used in Section 402(a)(7)(A) is not inevitably controlling of the merits of this action and does not necessarily require the Court to issue the preliminary injunctive relief sought by plaintiffs. The Court must also consider the legislative history of Section 402(a)(7)(A) and the general purposes behind the statutory scheme of which it is a part in order to decide the meaning that Congress intended the word "income" to have when it enacted Section 402(a)(7)(A). Reference to statutes that are closely related to Section 402(a)(7)(A) is also appropriate. But it cannot be gainsaid that defendants Blum and Krauskopf, in opposing the preliminary injunctive relief sought by plaintiffs, face a heavy burden indeed in attempting to overcome the DHHS definition of the statutory language. It is from the perspective of the substantial burden that confronts plaintiffs that the Court proceeds to consider the additional guideposts to statutory interpretation.

## C. Legislative History

The Court begins its analysis of the legislative history of the word "income" as used in Section 402(a)(7)(A) by again observing that the time constraints under which the parties and the Court have labored have not permitted an exhaustive analysis of the relevant legislative history. The Court notes that this case involves a statutory term, "income," that was introduced into the Social Security Act over forty years ago and that is part of a statutory provision, Section 402(a)(7) of the Social Security Act, that has repeatedly been amended since its enactment. However, the materials submitted by the parties have enabled the Court to reach some preliminary conclusions regarding the legislative history of the word "income" as used in Section 402(a)(7)(A). The conclusions that the Court has reached at this juncture fully support plaintiffs' argument that the word "income," as used in Section 402(a)(7)(A), means *net* income and does not include mandatory payroll deductions such as withholding for federal income tax purposes.

The AFDC program was established in 1935 by the enactment of Title IV of the Social Security Act, Pub.L. No. 74–271, 49 Stat. 620 (1935). As originally enacted, the AFDC program did not expressly require participating states to consider an AFDC-eligible family's income in determining the amount of its monthly AFDC grant. *See* Pub.L. No. 74–271, § 402(a), 49 Stat. 627 (1935). This requirement was added to the AFDC program by Section 401(b) of the Social Security Act Amendments of 1939, Pub.L. No. 76–379, 53 Stat. 1360, 1379–80 (1939). This provision appended the following language to Section 402(a) of the Social Security Act as subsection (7): "the State agency shall, in determining need, take into consideration any . . . income and resources [other than AFDC payments] of any child claiming [AFDC]."

While Section 402(a)(7) of the Social Security Act has often been amended since its enactment, the language just quoted has remained part of Section 402(a)(7) of the Social Security Act throughout the nearly forty-three years since the passage of the Social Security Act Amendments of 1939. In the Court's view, then, the legislative history most relevant to an analysis of the meaning of the word "income" as used in Section 402(a)(7)(A) is the legislative history of the Social Security Act Amendments of 1939.

The legislation that became the Social Security Amendments Act of 1939 was pro-

posed in January 1939 by the Social Security Board, the federal agency then charged with administering the AFDC program as well as the other public assistance programs that were created by the Social Security Act. H.R. Doc.No. 110, 76th Cong., 1st Sess. (1939) (presidential report to Congress transmitting Social Security Board's "Proposed Changes in the Social Security Act"). Hearings on the proposed legislation were held by the House of Representatives during February, March, and April of 1939. Regrettably, the Court has been unable, in the short period of time in which it has prepared its decision on plaintiffs' motion, to obtain a copy of the published version of these hearings.

It is likely that these hearings are significant to the merits of this case, because, after the conclusion of the hearings, Representative Doughton introduced a bill in the House of Representatives that included the previously quoted language that was ultimately enacted as part of Section 402(a)(7) of the Social Security Act. H.R. 6497, 76th Cong., 1st Sess. § 401(b) (1939). Shortly thereafter, Representative Doughton introduced a second bill that also contained this language. H.R. 6635, 76th Cong., 1st Sess. § 401(b) (1939). The House Report that accompanied the second of these bills explained the proposed Section 402(a)(7) of the Social Security Act only by saying that "Under this clause the State plan must provide that the State agency shall, in determining need, take into consideration any income and resources of any child claiming aid under this title." H.R.Rep.No.728, 76th Cong., 1st Sess. 55–56 (1939). The Senate Report that accompanied the same legislation is no more illuminating than the House Report. See S.Rep.No.734, 76th Cong., 1st Sess. 66 (1939).

The most important legislative history relating to the enactment of Section 402(a)(7) of the Social Security Act thus may well be the hearings that were held before the House of Representatives in early 1939. Nevertheless, the Court is able, without having read the published version of the hearings, to predict with a fair degree of confidence what the hearings will disclose.

Immediately after the enactment of the Social Security Act Amendments of 1939, the Social Security Board, which had proposed the legislation in the first place, issued an administrative interpretation that defined the word "income," as used by Congress in enacting Section 402(a)(7) of the Social Security Act, to mean funds that "actually exist" and are "available," in the sense that the funds are "actually...on hand or ready for use when...needed." See Plaintiffs' Exhibits D & E. In accord with this interpretation, mandatory payroll deductions, such as were then made for the purposes of the Federal Insurance Contributions Act, see Internal Revenue Code of 1939, § 1401(a), 26 U.S.C. § 1401(a) (1940), and such as commenced being made two years later for the purposes of federal income tax withholding, were not treated as "income" within the meaning of Section 402(a)(7) of the Social Security Act. Rather, the Social Security Board took the position that the word "income," as used in this section of the Social Security Act, referred to "net income." See Plaintiffs' Exhibit 1. Given that the Social Security Board was the agency that proposed the legislation in the first place, the Court is very doubtful that the Social Security Board erred either (1) in interpreting the word "income," as used in the Social Security Act Amendments of 1939, to mean "available" or "net" income, or (2) in then drawing the logical conclusion that mandatory payroll deductions were not "income" within the meaning of Section 402(a)(7) of the Social Security Act.

On the basis of the legislative history before the Court at this juncture, then, the Court concludes that Congress intended the word "income," as used in Section 402(a)(7) of the Social Security Act, to mean "available" income, and did not contemplate that Section 402(a)(7) income would be deemed to include mandatory payroll deductions. Since the word "income," as used by Congress in enacting Section 402(a)(7) of the Social Security Act, has never been changed, the Court does not believe that any of the subsequent amendments to Sec-

tion 402(a)(7) of the Social Security Act are directly relevant to its analysis of the legislative history of the word "income" as used in Section 402(a)(7)(A). Nevertheless, it is important for the Court to make brief mention of two congressional amendments of Section 402(a)(7) of the Social Security Act, one that occurred in 1962 and a second that occurred in 1981.

In 1962, Section 402(a)(7) of the Social Security Act was amended by Section 106(b) of the Public Welfare Amendments of 1962, Pub.L.No. 87–543, 76 Stat. 172, 188 (1962), which amendment required states to determine the amount of an AFDC-eligible family's monthly grant by considering not only the family's "income" but also "any expenses reasonably attributable to the earning of [that] income." This amendment thus injected the "work expense deduction," which is presently codified in significantly different form in 42 U.S.C. §§ 602(a)(8)(A)(ii) and (a)(8)(A)(iii), into the method of calculating the amount of an eligible family's monthly AFDC grant. The legislative history of the "work expense deduction," as enacted in 1962, discloses a congressional intention that an individual's Section 402(a)(7) income should be reduced by amounts, such as transportation costs, uniform costs, and the costs of meals, that the individual expended in order to obtain the income. See, e.g., S.Rep.No.1589, 87th Cong., 2d Sess. 17–18 (1962), U.S.Code Cong. & Admin.News 1962, p. 1943; Hearings on the Public Assistance Act of 1962 Before the Senate Comm. on Finance, 87th Cong., 2d Sess. 152 (1962) (testimony of Secretary Ribicoff). Defendants have not pointed the Court to anything in the legislative history of the Public Welfare Amendments of 1962 that indicates a congressional intention that mandatory payroll deductions should be subtracted from an individual's Section 402(a)(7) income pursuant to the "work expense deduction." At this juncture, the reason seems clear: since mandatory payroll deductions were not within the meaning of Section 402(a)(7) "income," there was no reason for Congress to pass legislation requiring such amounts to be subtracted from Section 402(a)(7) income

for the purpose of calculating the amount of an eligible family's monthly AFDC grant.

In 1981, Section 402(a)(7) of the Social Security Act was amended by Section 2302 of the Omnibus Budget Reconciliation Act of 1981, Pub.L.No. 97–35, 95 Stat. 844 (1981). This amendment removed the "work expense deduction" entirely from Section 402(a)(7) of the Social Security Act and placed this deduction instead in Section 402(a)(8) of the Social Security Act. Further, this amendment provided an entirely different method for calculating the "work expense deduction," whereby an individual's Section 402(a)(7) income is reduced by a standard monthly amount of $75.00 rather than by the actual amount of the individual's itemized work expenditures.

The parties disagree on how Congress, in passing the Omnibus Budget Reconciliation Act of 1981, understood the word "income" as used in Section 402(a)(7) of the Social Security Act. In explaining the reasons for altering the method of calculating the "work expense deduction," one congressional report stated that the itemization required by the former method permitted AFDC recipients to falsify amounts and required states to make administratively burdensome monthly calculations. See S.Rep.No.97–139, 97th Cong., 1st Sess. 501–02 (1981), reprinted in U.S.Code Cong. & Adm.News, 396, 768–79 (1981). Since the amounts represented by mandatory payroll deductions are paradigmatic examples of amounts that are not subject to being falsified and are not difficult for the states to calculate, this portion of the legislative history of the Omnibus Budget Reconciliation Act of 1981 indicates that Congress did not believe, when it passed that act, that mandatory payroll deductions had anything to do with the "work expense deduction." Presumably, then, Congress must have thought that mandatory payroll deductions were not "income" within the meaning of that word as used in Section 402(a)(7) of the Social Security Act. However, defendants point out that there is other legislative history, which the Court discusses in greater

detail later in this decision, indicating that Congress thought, when it passed the Omnibus Budget Reconciliation Act of 1981, that the word "income," as used in Section 402(a)(7) of the Social Security Act, meant *gross* income. *See* p. 948 *infra.*

In the Court's view, the confusion created by the legislative history of the Omnibus Budget Reconciliation Act of 1981, while real, is something of a tempest in a teapot. Since the ninety-seventh Congress did not amend the language initially enacted by the seventy-sixth Congress, the relevant question is not how the ninety-seventh Congress understands the word "income," but how the seventy-sixth Congress understood that word. As the Court previously stated, the legislative history before it at this juncture supports plaintiffs' position that the seventy-sixth Congress used the word "income" to mean *net* income, that is, take-home pay after mandatory payroll deductions.

To summarize, the word "income," as presently used in Section 402(a)(7)(A), was introduced into Section 402(a)(7) of the Social Security Act by the Social Security Amendments Act of 1939. The legislative history before the Court at this juncture strongly indicates that Congress, in enacting the Social Security Amendments Act of 1939, understood the word "income" to mean *net* income, and thus not to include mandatory payroll deductions such as were then made for the purposes of the Federal Insurance Contributions Act. Thus, the legislative history of the word "income" as used in Section 402(a)(7)(A) indicates, as plaintiffs argue, that mandatory payroll deductions are, and have been since 1939, disregarded in calculating the amount of an eligible family's monthly AFDC grant. Viewed in conjunction with DHHS's prevailing interpretation of Section 402(a)(7)(A), the legislative history of the statute requires the Court to conclude that plaintiffs are likely to prevail on the merits of their interpretation of the meaning of the word "income" as used in Section 402(a)(7)(A).

### D. Related Statutes

■ Courts have often recognized that the resolution of questions of statutory interpretation may be aided by reference to the prevailing interpretation of other statutes that share the same general purpose or deal with the same general subject as the statute under consideration. *Northcross v. Board of Education of the Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973) (per curiam); *Cook v. Budget Rent-A-Car Corp., supra*, 502 F.Supp. at 500. Section 402(a)(7)(A) is closely related, in this fashion, to other provisions in the Social Security Act that use an individual's "income" to determine either the individual's eligibility for an entitlement program or the amount of the grant to which the individual is entitled. Having made what it freely admits is a non-exhaustive review of the "related statutes" relied upon by defendants, the Court does not believe that these statutes require alteration of the Court's view, reached after consideration of the relevant administrative interpretations and legislative history, that plaintiffs are likely to prevail on the merits on their interpretation of the word "income" as used in Section 402(a)(7)(A).

Defendants rely on the undisputable fact that in certain places the AFDC statute clearly uses the word "income" in reference to what the Court has herein defined as *gross* income, that is, an individual's salary or wages. *See, e.g.,* 42 U.S.C. §§ 602(a)(8)(A)(ii) and (a)(8)(A)(iii) (using term "earned income" to delineate "work expense deduction"; under DHHS regulations, "earned income" means gross income); 42 U.S.C. § 602(8)(A)(iv) (using term "earned income" to delineate "work incentive deduction"; under DHHS regulations, "earned income" means gross income); 42 U.S.C. § 602(a)(18) (using term "total income" to delineate AFDC eligibility requirement; legislative history indicates that "total income" means gross income). Apparently, defendants' argument is that, since Congress clearly used the word "income" to mean *gross* income when it enacted some of the other provisions that govern the AFDC program, it must have used the

word "income" to mean *gross* income when it enacted Section 402(a)(7) of the Social Security Act.

The Court finds two problems with this argument. First, this argument neglects the fact that all the "related statutes" relied on by defendants serve different statutory purposes from the purpose served by Section 402(a)(7)(A). As the Court of Appeals for this Circuit pointed out in *Connecticut State Department of Public Welfare v. DHEW,* 448 F.2d 209, 214–15 (2d Cir. 1971), it would not be unreasonable for Congress to give the word "income" a particular meaning in one statutory provision, and then use the word to mean something entirely different in a second statutory provision that serves an entirely different purpose from the first.

The second problem with this argument is that it neglects the fact that all the "related statutes" relied upon by defendants were enacted *after* Section 402(a)(7) of the Social Security Act. The importance of this point is well illustrated by Section 2303 of the Omnibus Budget Reconciliation Act of 1981, which provides that a family shall not be eligible for the AFDC program if the family's "total income" exceeds 150 percent of the state's standard of need for a family of the same composition. The legislative history of this strongly indicates that Congress used the word "income" in Section 2303 to mean gross income. *See* S.Rep.No.97–139, 97th Cong., 1st Sess. 504 (1981), *reprinted in* U.S.Code Cong. & Adm.News 770–71 (1981). However, the fact that the ninety-seventh Congress used the word "income" to mean gross income does not necessarily mean that the seventy-sixth Congress used this word in the same way when it enacted Section 402(a)(7) of the Social Security Act.

The Court accepts defendants' vigorous argument that certain of the legislative history of the Omnibus Budget Reconciliation Act of 1981, particularly insofar as it concerns Section 2303 of that act, strongly indicates that Congress passed that act believing that the word "income," as used in Section 402(a)(7) of the Social Security Act, meant gross income. As the Court previ-

ously observed, certain other legislative history of the Omnibus Budget Reconciliation Act of 1981 indicates an opposite congressional understanding. Assuming for the purposes of argument that the ninety-seventh Congress did indeed understand Section 402(a)(7) of the Social Security Act in the fashion urged by defendants, this fact does not really advance defendants' position. The proper inquiry for the Court is how the seventy-sixth Congress understood the word "income" when it enacted it as part of Section 402(a)(7) of the Social Security Act, not how the ninety-seventh Congress understood this word when it failed to amend the statutory language of which the word is a part. As the Court has explained at length, the record before the Court indicates quite strongly, contrary to what may well have been the ninety-seventh Congress's belief, that the seventy-sixth Congress used the word "income" to mean *net* income.

The foregoing discussion demonstrates the limited utility of related statutes to a party whose interpretation of a statute is wholly unsupported by the other guideposts to statutory interpretation. While the related statutes relied upon by defendants are consistent with their interpretation of the word "income" as used in Section 402(a)(7)(A), these statutes do not exclude the interpretation of that word proffered by plaintiffs. Since plaintiffs' interpretation, but not defendants', enjoys the support of the prevailing administrative regulations and the relevant legislative history, the Court is unable to assign the related statutes relied upon by defendants significant weight in favor of defendants' interpretation of Section 402(a)(7)(A).

### E. Purpose of Section 402(a)(7)(A)

It scarcely need be said that any court faced with a problem of statutory construction should endeavor to interpret the statute in question in light of the purposes that Congress sought to serve by its enactment. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).

Thus, the courts will not rely on the other guideposts to statutory interpretation where to do so would lead to a result that conflicts with common sense and that is unreasonable in light of the evident statutory purpose. *In re Adamo*, 619 F.2d 216, 222 (2d Cir.), *cert. denied*, 449 U.S. 843, 101 S.Ct. 125, 66 L.Ed.2d 52 (1980). On the other hand, where the other guideposts to statutory interpretation support an interpretation that is reasonably calculated to achieve the statutory purpose, it is not for a judge to substitute his judgment for that of Congress by giving the statute a different interpretation, even if the judge is convinced that his approach is better calculated to achieve the goals that Congress had in mind. *Chiaramonte v. INS*, 626 F.2d 1093, 1100 (2d Cir. 1980); *Manufacturers Hanover Trust Co. v. Commissioner*, 431 F.2d 664, 668 (2d Cir. 1970); *United Parcel Service, Inc. v. United States Postal Service*, 455 F.Supp. 857, 866 (E.D.Pa.1978), *aff'd*, 604 F.2d 1370 (3d Cir. 1979), *cert. denied*, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980).

The congressional purpose in enacting the AFDC program was to assist "needy" families. In adding Section 402(a)(7) to the Social Security Act, Congress sought to serve that purpose by assuring that the limited funds available would indeed be distributed to "needy" families. *See* H.R.Rep. No.728, *supra*, at 29. Logically, the extent of a family's "need" depends on the funds that it has available to it, ready for use to meet the necessities of life. Certainly, mandatory payroll deductions are not, in any sense of the word, funds that are *available* to an individual or his family. Thus, it would have been perfectly reasonable for Congress, when it enacted Section 402(a)(7) of the Social Security Act, to use the word "income" to mean "net" or "available" income: only net income or available income is income that realistically reduces a family's need for public assistance. Thus, plaintiffs' interpretation of Section 402(a)(7)(A) is an interpretation reasonably calculated to achieve the statutory purpose that Congress had in mind when it enacted Section 402(a)(7) of the Social Security Act. Since plaintiffs' interpretation enjoys the support of the other guideposts to statutory interpretation, the Court is bound to hold, at this juncture, that plaintiffs' interpretation is probably correct.

### CONCLUSION

Plaintiffs' motion is granted in its entirety. This action is certified as a class action pursuant to Rule 23(c), Fed.R.Civ.P. The class certified includes members of AFDC-eligible families who reside in New York State, who have earned income, and who either receive or apply for AFDC after December 15, 1981. Defendants Blum and Krauskopf are preliminarily enjoined, pursuant to Rule 65(a), Fed.R.Civ.P., from calculating the amount of an eligible family's monthly AFDC grant by deeming mandatory payroll deductions to be "income" within the meaning of 42 U.S.C. § 602(a)(7)(A). Given the drastic nature of the relief that it orders by today's decision, the Court believes it is incumbent to bring this litigation to a speedy conclusion. Accordingly, discovery is to be completed by March 12, 1982, and either a pretrial order or cross-motions for summary judgment are to be filed by March 26, 1982.

Settle order on notice.